STATE OF CONNECTICUT *v.* ROLAND COSTON

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and SHEA, Js.

Argued October 17—decision released December 9, 1980

*Donald D. Dakers,* assistant public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary Galvin,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant was tried before a jury on a two count information charging him with robbery in the first degree by acting with others in violation of General Statutes § 53a-134 (a) (4),[1] and attempted robbery in the first degree in

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

violation of General Statutes §§ 53a-49[2] and 53a-134 (a) (4). The information did not specify what property the defendant took or attempted to take or retain by force. On the first count the jury found the defendant not guilty of robbery in the first degree but guilty of larceny in the fourth degree. They found him guilty of attempted robbery in the first degree on the second count.

---

[2] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

The jury reasonably could have found the following facts. On March 27, 1978, at approximately 1:30 p.m., the defendant and Ida Huckabee entered the Fayva Shoe Store in an East Haven shopping center. Within a short time Huckabee exchanged the shoes she had worn into the store with a pair from the rack, for which she did not intend to pay. The manager, Susan Horgan, observed her wearing the store's shoes. Horgan then noticed the imprint of a pair of shoes in the defendant's back pocket underneath a long blue denim coat he wore as he left the store. She followed the defendant outside, and requested him to return the shoes. The defendant several times denied having the shoes. However, he reluctantly followed Horgan back into the shoe store. Once inside, he threw the shoes on the floor. Horgan then instructed her assistant, Richard Bassett, to call the police. As soon as Bassett finished waiting on another customer, he walked to the phone and, despite the defendant's importunings, reported a shoplifting incident.

Horgan told the defendant to remain in the store and stood between him and the door. Twice the defendant moved toward the door and on both occasions she remained in the doorway. He then hit her in the face and shoved her about.

After Huckabee and Bassett joined the melee, Horgan yelled at Bassett to let the defendant and Huckabee go. The defendant and Huckabee headed for the door. But when Horgan asked Huckabee to return the Fayva shoes she was still wearing, Huckabee began to swear at her and started toward her. Thereupon the defendant took Huckabee by the arm and led her out of the store into the parking lot, telling her to come on. There they split up after

she told him: "Go ahead; it doesn't make sense for both of us to get arrested." Bassett followed the defendant until the defendant stopped, took out a gun, pointed it at him and shouted a threat.

Subsequently the defendant was arrested in New Haven, at which time he irately demanded to know why he was charged with robbery when all he had done was shoplift the shoes and use the gun to escape.

As disclosed in the transcript of the trial proceedings, the prosecutor, the judge, the defendant, and the jury were confused as to whether one or both counts of the information related to the larceny of the shoes Huckabee wore when she walked out of the store. At the conclusion of the evidence, the state conceded that, although the two count information charged two crimes, the facts established only one crime. In accordance with this concession, the court instructed the jury that they could not find the defendant guilty on both counts. Despite this specific prohibition, the jury returned a verdict of guilty of the lesser included offense of larceny in the fourth degree on the first count, and guilty of attempted robbery in the first degree on the second count.

The court set aside the verdict on the first count and sentenced the defendant on the second count. The state's brief and oral argument, however, claim that the information charged two crimes and that the Huckabee shoes constituted no part of the second count which resulted in the conviction on appeal. For the purpose of this appeal, we accept the state's latest characterization of the property which relates to the second count.

The fact that the defendant committed a larceny while carrying a concealed weapon and later assaulted the victims of the larceny in an attempt to escape does not by itself permit us to sustain his conviction for attempted robbery. See *State* v. *Velicka,* 143 Conn. 368, 371, 122 A.2d 739 (1956). The attempt statute; General Statutes § 53a-49 (b); specifies that "[c]onduct shall not be held to constitute a substantial step" in a course of conduct planned to culminate in the commission of a crime "unless it is strongly corroborative of the actor's criminal purpose."

Without the purpose of "(1) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny"; General Statutes § 53a-133; there can be no robbery or plan to commit a robbery. Without that purpose, force or threats cannot constitute "a substantial step in a course of conduct planned to culminate in"; General Statutes § 53a-49 (a) (2); the commission of robbery. *State* v. *Feltovic,* 110 Conn. 303, 311, 147 A. 801 (1929).

Under General Statutes § 53a-134 (a) (4) the display or threatened use by a participant in the crime "of what he represents by his words or conduct to be a . . . firearm" is aggravating conduct which converts a simple robbery into robbery in the first degree. *Velicka* suggests that the purpose of the defendant's aggravating conduct makes no difference if the conduct forms "part of a continuous transaction which includes a robbery or attempted robbery." *State* v. *Velicka,* supra, 371. In this case,

however, after the defendant completed the larceny he returned to the store and threw the shoes on the floor. Thus the later sequence of his acts does not form part of the same continuous transaction as the earlier larceny unless the defendant intended to keep or regain the shoes. Only in that circumstance could the aggravating conduct occur "in the course of the commission of the crime or of immediate flight therefrom." General Statutes § 53a-134 (a); *State* v. *Velicka,* supra, 371.

"[T]he state has the burden of producing evidence from which the jury may rationally conclude that the defendant has been proven guilty of the essential elements of the crime beyond a reasonable doubt." *State* v. *Reid,* 154 Conn. 37, 40–41, 221 A.2d 258 (1966). The state, however, introduced no evidence that the defendant intended or attempted to retrieve the shoes he had thrown on the floor inside the store. Thus, in view of the call to the police and the defendant's motivation to avoid an arrest for the larceny, which he completed the first time he left the store, his struggle before leaving the store again and his later threat do not strongly corroborate the criminal purpose required for robbery. Compare *State* v. *Gosselin,* 169 Conn. 377, 381, 363 A.2d 100 (1975). We acknowledge the jury's right to draw reasonable logical inferences from the facts proven. *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). Nevertheless, the cumulative effect of the evidence in this case, when given the construction most favorable to sustaining the verdict; *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); could not establish that the defendant used force or threats of force for a purpose encompassed by the crime charged in the infor-

mation. *State* v. *Baker,* 182 Conn. 52, 62, 437 A.2d 843 (1980); *State* v. *Festo,* 181 Conn. 254, 259-60, 435 A.2d 38 (1980).

The evidence is insufficient to sustain the conviction for attempted robbery in the first degree only because the state failed to prove the required connection between the force or threats and the larceny. The evidence sufficed to sustain a conviction for the lesser included offense of attempted larceny in the fourth degree. The jury's verdict necessarily determined that the state proved all the elements of attempted larceny in the fourth degree beyond a reasonable doubt. Cf. *State* v. *Grant,* 177 Conn. 140, 147, 411 A.2d 917 (1979). Under the circumstances of this case, the reduction of the defendant's conviction to the lesser included offense cannot possibly prejudice the defendant. *State* v. *Saracino,* supra; *State* v. *Grant,* supra.

Accordingly, the case is remanded for modification of the judgment in accordance with this opinion and for resentencing on the lesser included offense of attempted larceny in the fourth degree.

In this opinion the other judges concurred.