STATE OF CONNECTICUT *v.* MCGARRETT WALLACE
(AC 17425)

O'Connell, C. J., and Hennessy and Vertefeuille, Js.

Argued October 20, 1999—officially released February 29, 2000

*Richard A. Reeve*, special public defender, with whom was *Sarita Ordonez*, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Christopher Alexy*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, McGarrett Wallace, appeals from the judgments of conviction, following a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), criminal trespass in the

second degree in violation of General Statutes § 53a-108, two counts each of attempt to commit burglary in the third degree in violation of General Statutes §§ 53a-49 and 53a-103, and attempt to commit criminal trespass in the second degree in violation of §§ 53a-49 and 53a-108, and one count of attempt to commit robbery in third degree in violation of General Statutes §§ 53a-49 and 53a-136. Thereafter, the defendant pleaded guilty to being a persistent felony offender in violation of General Statutes § 53a-40 (b).

The defendant claims that (1) the trial court improperly determined that interfering with a police officer can be a predicate offense for the charge of burglary, (2) there was insufficient evidence of the crime of interfering with a police officer to sustain the burglary charges and (3) there was insufficient evidence to establish the crime of attempt to commit robbery in the third degree. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The defendant was charged with a series of offenses stemming from his activities on October 21, 1995, near the New Haven Lawn Club and Whitney, Orange, Humphrey and Bradley Streets in New Haven. Around noon that day, the assistant manager of the New Haven Lawn Club observed the defendant in the club parking lot next to two cars that had been broken into.[1] The assistant manager and a fellow employee asked the defendant what he was doing, and the defendant ran. The New Haven police were informed, given a description of the defendant and were joined by the Yale University police department in a search of the area. The police patrolled the perimeter of the area on foot and in cars. Several police officers testified that they saw a man fitting the defendant's description run-

[1] Although the defendant was charged with two counts of burglary in the third degree and two counts of tampering with a motor vehicle in connection with this incident, he was found not guilty on these charges.

ning in and out of the backyards of the neighboring
properties. The officers eventually focused their atten-
tion on 502 Orange Street when they heard two men
yelling that their apartment had been broken into. Offi-
cer Brian Donnelly of the New Haven police department
observed that a storm window in the apartment had
been forcibly removed. There were muddy footprints
on the windowsill, on a bent shelving unit below the
window and on the floor. Jun Xie, an occupant of the
apartment, heard noises from the rear of the apartment
and found the defendant sitting in the bathtub. Xie
attempted to close the bathroom door, but the defen-
dant was able to pull the door open, demanding, "Give
me some money." When Xie saw that his roommate
was next to him, he refused and told the defendant to
leave, which the defendant did.[2] Donnelly relayed this
information to other officers, and soon thereafter a
police radio broadcast indicated that the defendant had
been seen at 223 Bradley Street.

Kelly Wardrup, a sergeant with the New Haven police,
saw the defendant while driving past 223 Bradley Street.
She observed the defendant come out of the right side
of the house, climb onto the porch over the railing and
squat down while opening the screen door and pushing
on the interior door. As she approached, the defendant
ran off the porch, down Bradley Street and into the
backyards.[3] Soon thereafter, another broadcast from
a different officer announced that the defendant was
attempting forcibly to enter a residence at 472
Orange Street.

Officer Dominic Perelli of the Yale police observed
the defendant enter the enclosed porch of 472 Orange

---

[2] These activities at 502 Orange Street are the basis of the defendant's
conviction of burglary in the third degree, criminal trespass in the second
degree and attempted robbery in the third degree.

[3] These activities at 223 Bradley Street are the basis of the defendant's
conviction of attempted burglary in the third degree and attempted criminal
trespass in the second degree.

Street by opening the porch door. As the defendant began pushing on the inside door to gain entry, Perelli drew his revolver and ordered the defendant to stop and place his hands over his head. The defendant backed up, turned, kicked out the back window of the porch and dove through the opening, escaping into the backyards once again.[4] At various points during the search, the defendant was spotted in other backyards but always managed to escape. Eventually, the defendant jumped over a fence, ran into the street, slipped in a puddle and was apprehended by both citizens and police. With respect to the burglary charges,[5] the underlying crime alleged by the state was interfering with an officer.

## I

The defendant claims first that the crime of interfering with an officer[6] does not properly qualify as a predicate offense for burglary. He claims that interfering cannot be a "crime therein," as provided for in § 53a-103 (a), because it is not a crime against people or property inside the building and because the crime of interfering had already been accomplished, if at all, prior to his unlawful entry. We disagree.

We must first determine the parameters of the "crime therein" requirement of § 53a-103 (a). Such a determination is a matter of statutory construction and, therefore, a matter of law over which this court's review is plenary. See *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 226, 720 A.2d 235 (1998). "The process of statutory

---

[4] These activities at 472 Orange Street are the basis of the defendant's conviction of attempted burglary in the third degree and attempted criminal trespass in the second degree.

[5] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[6] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997)." (Internal quotation marks omitted.) *State* v. *Salmon*, 250 Conn. 147, 152, 735 A.2d 333 (1999).

We begin our analysis by examining the plain language of § 53a-103 (a), which provides in relevant part that a person is guilty of third degree burglary "when he enters or remains unlawfully in a building with intent to commit a crime therein." Contrary to the defendant's claim that the crime must be against people or property inside the building, the statute makes no reference to the type of crime that must be intended.[7]

---

[7] We note, however, that the crime of trespass or any other crime related to the breaking and entering actions of burglary itself may not be considered by this court to be a "crime therein." In the comments to the Model Penal Code, on which Connecticut's code is based, the drafters noted that the crime a burglar intends to commit cannot be trespass, the very crime he necessarily commits when entering: "There is, however, one type of crime that should be excluded from the range of offenses that will satisfy the purpose requirement of burglary, namely other trespassory offenses designed solely to protect the interests that are invaded by the unprivileged entry that the burglar necessarily makes. . . . The word 'therein' in Subsection (1) of the Model Code provision [defining burglary] performs the same function by requiring that the intent be to commit an offense after the entry has been effected. The offense of trespass will thus have already been committed and a purpose to violate Section 221.2 [trespass] will be excluded from the range of illegal purposes that will suffice for a burglary conviction." American Law Institute Model Penal Code and Commentaries (1980), part II, § 221.1, comment, pp. 76–77.

In addition, "[i]t is clear from . . . the comments by the commission to revise the criminal statutes that the basic rationale underlying the enactment of all of our present burglary statutes was protection against the type of invasion of premises likely to terrorize occupants." *State* v. *Belton*, 190 Conn. 496, 506, 461 A.2d 973 (1983).[8] Entering a residence unlawfully to evade the police is very likely to terrorize the occupants of the residence. It would, therefore, frustrate the purpose of the statute to hold that simply because the "crime therein" is not specifically against people or property inside, a burglary has not been committed. In the present case, the defendant was allegedly breaking into residences to hide from the police who were chasing him. Because interfering with the police is a crime and because the defendant entered homes unlawfully to commit this crime, we hold that interfering with the police is a valid predicate offense for the burglary charges in this case.

The defendant claims that in the present situation, an individual has completed all of the elements of interfering before attempting the unlawful entry and has no intent to commit a separate offense within the building entered. Thus, the defendant claims, a person who has committed all of the acts necessary to establish the offense prior to the unlawful entry does not, as a matter of law, enter with the intent to commit the crime therein. We are unpersuaded. The defendant has not

---

[8] Our Supreme Court noted that "while the legislative history of our burglary statutes fails to shed light on the rationale behind enactment, the comments by the commission to revise the criminal statutes clearly indicate the intended purpose of General Statutes §§ 53a-101 through 53a-103a. See Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, pp. 32–34. In both the house and senate proceedings addressing the enactment of our present penal code, the work and recommendations of the commission received numerous accolades. 13 H. R. Proc., Pt. 11, 1969 Sess., pp. 5033–63; 13 S. Proc., Pt. 7, 1969 Sess., pp. 3519–47." *State* v. *Belton*, supra, 190 Conn. 506 n.7.

cited any authority in support of this position, nor have we found any.

General Statutes § 53a-167a, which prohibits interfering with an officer, defines a crime, which, depending on the facts of the case, may be a continuing offense or may be an offense that is completed on the happening of one event. The actions of the defendant in this case lead to a conclusion that the evasion of the police was a continuing offense rather than numerous, separate offenses. This does not preclude, however, the continuous offense of interfering as being the predicate offense for numerous, separate burglary charges. The defendant's entering into a residence was a continuation of the offense of interfering with an officer that began when the defendant first ran from the police. While the intent to interfere may not be separately punishable each time the defendant unlawfully entered the residences, it does not alter the fact that when the defendant entered the residence, he was doing so with the intent to commit the crime of interfering with an officer. Accordingly, in the present case, the crime of interfering with an officer is a valid predicate offense for the charge of burglary.

## II

The defendant claims next that there was insufficient evidence to support the charges of burglary and attempted burglary. He claims that the evidence was insufficient to prove that he intended to commit a "crime therein," namely, interfering with an officer. We disagree.

"In reviewing claims of insufficiency of the evidence, an appellate court must first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts impliedly found by the jury. The court must then determine, on the facts thus established and the inferences reasonably drawn therefrom,

whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Stanley*, 223 Conn. 674, 677, 613 A.2d 788 (1992)." *State* v. *Green*, 55 Conn. App. 706, 714, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438 (2000).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 656, 737 A.2d 404 (1999).

On the basis of the evidence presented and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the defendant had the intent to enter residences unlawfully to interfere with officers. The defendant ran from the employees at the New Haven Lawn Club when they asked what he was doing near the cars that had been broken into. In addition, he was spotted by Sergeant Everit Nichols, who was responding to a call in the area. Shortly thereafter, he was seen on Orange Street, at the corner of Pearl Street and in the rear yards in the block surrounded by Orange, Pearl, Lincoln and Bradley Streets. Nichols testified that he set up all the officers in a perimeter at the four corners of the surrounding block with more officers proceeding on foot into backyards. Nichols then spotted the defendant again when a passing motorist pointed at him. The defendant saw the officer and ran back toward Bradley Street.

While numerous officers surrounded the area in cars and on foot, the defendant unlawfully entered the apart-

ment of Xie at 502 Orange Street and was found hiding in the bathtub. Although the defendant stated that he came into the apartment to make a telephone call, the jury could reasonably infer that the use of the telephone or the bathtub were not the reasons that he forcibly removed the storm window, opened the window and climbed into the apartment.

Additional evidence presented to the jury concerning the attempted burglary at 223 Bradley Street was that a police officer observed the defendant climb onto the porch and squat down while opening the screen door and pushing on the interior door. As the officer approached, the defendant ran from the porch and disappeared into the neighboring backyards. Furthermore, the evidence placed before the jury in connection with the attempted burglary at 472 Orange Street was that a police officer observed the defendant enter the back porch, open the screen door and push on the door to gain entry. The officer ordered the defendant to stop and place his hands above his head. The defendant kicked out a window on the porch, dove through the opening and ran off through the neighboring backyards.

From each of those unlawful entries or attempted entries of residences, it was reasonable for the jury to infer that the defendant was seeking to escape from the pursuing police. The defendant was seen jumping fences, running in and out of backyards, hiding in a bathtub and attempting to enter residences unlawfully. The defendant claims, however, that he thought he was being chased by someone from the New Haven Lawn Club, not by police officers. Although the state and the defendant differ as to the reasonable inferences that can be drawn from the facts presented at trial, "[t]his court will construe the evidence in the light most favorable to sustaining the trial court's [judgment] and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical infer-

ences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Martin*, 56 Conn. App. 98, 105, 741 A.2d 337 (1999).

We conclude that the jury could logically infer that the defendant was attempting to avoid being discovered by the police when he ran through various backyards, hid in the bathtub of Xie's apartment and attempted to break into homes. The unlawful entry into the apartment at 502 Orange Street and the attempted entry into the other residences, coupled with the intent to interfere with the police officers searching for him, supports the convictions of burglary and attempted burglary as found by the jury.

### III

The defendant claims finally that the evidence was insufficient to establish the commission of an attempted robbery in the third degree at 502 Orange Street. He contends that there was no evidence presented to show that force was used or threatened during the attempted larceny.

A person is guilty of criminal attempt if, acting with the kind of mental state required for the commission of the crime, he intentionally engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be or if he intentionally commits an act that constitutes a substantial step in a course of conduct planned to culminate in the commission of the crime. See General Statutes § 53a-49; *State* v. *Green*, 194 Conn. 258, 276, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compel-

ling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133.

Contrary to the defendant's claim that he did not attempt or threaten to use force on Xie, it was reasonable for the jury to have found that there was a sufficient threat of immediate use of physical force to warrant an attempted robbery conviction. The defendant claims that his "very limited" use of force here was separate and distinct from the attempted larceny because he merely intended "to flee from his pursuers" when he forced the bathroom door open. The defendant cites *State* v. *Coston*, 182 Conn. 430, 437, 438 A.2d 701 (1980), for the proposition that the state has to prove the required connection between the force or threats and the larceny. The statement of law is correct, but *Coston* does not support the defendant's theory of defense.

In *Coston*, the defendant entered a store, stole a pair of shoes and, after being caught outside, returned to the store and threw the shoes on the floor. Id., 433. When the employees of the store told the defendant to stay and wait for the police, the defendant assaulted one employee and left the store. Id. When another employee followed the defendant out of the store, the defendant pointed his gun at him and made a threat. Id., 434. The *Coston* court found that the defendant's later sequence of acts did not form part of the same continuous transaction as the earlier larceny. Id., 436. The court therefore held that the evidence was insufficient to support an attempted robbery conviction because the defendant already had completed the larceny and left the store before he assaulted the employees. Id., 437.

The defendant argues that in the present case there was no threat or show of force related to the demand for money. He claims that the force used against Xie

in pulling open the bathroom door was for the purpose of continuing his efforts to avoid his pursuers, and forcefully opening the door was not within the sequence of events directly connected to the demand for money. The defendant maintains that the only conduct directly connected to the attempted robbery was the single statement requesting money, and no force was used in connection with this solitary request. We disagree with the defendant and find that the jury could draw reasonable inferences consistent with guilt on the attempted robbery count. The use or threat of force occurs "in the course of" larceny if it occurs "during the continuous sequence of events surrounding the taking or attempted taking, even though some time immediately before or after . . . ." *State* v. *Ghere*, 201 Conn. 289, 297, 513 A.2d 1226 (1986).

Reviewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that when the defendant was discovered by Xie in his bathtub and forcefully pulled open the bathroom door after a struggle and demanded money, he threatened the use of force upon Xie during the course of an attempted larceny. The evidence being sufficient, the jury's verdict must stand.

The judgments are affirmed.

In this opinion the other judges concurred.