STATE OF CONNECTICUT *v.* CATHERINE MOORE
(AC 26608)

Schaller, Bishop and Lavine, Js.

---

Argued November 30, 2006—officially released March 27, 2007

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Stephen J. Sedensky III*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Catherine Moore, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4), larceny in the sixth degree in violation of General Statutes §§ 53a-125b (a) and 53a-119 (9), and conspiracy to commit larceny in the sixth degree in violation of §§ 53a-48 and 53a-125b. On appeal, the defendant claims that (1) there was insufficient evidence to sustain her conviction for robbery in the third degree, (2) the court improperly

instructed the jury as to the crime of conspiracy to commit robbery in the first degree and (3) her rights against double jeopardy were violated.[1] We agree with the defendant that the court improperly instructed the jury with respect to the charge of conspiracy to commit robbery in the first degree and deprived her of the right to a fair trial. We therefore reverse the judgment of conviction and remand the case for a new trial on that charge. We affirm all other aspects of the defendant's conviction.

The jury reasonably could have found the following facts. On February 29, 2004, Imran Quazi, a loss prevention supervisor at the J.C. Penney retail store in Danbury, commenced video surveillance of the defendant and her companion, James Evans. Quazi and his associate, Andrew Benicewicz, observed the defendant and Evans remove a foot massager from a merchandise display and place it behind a fixture. The defendant and Evans then went to the register to pay for other items. After completing their transaction, the defendant and Evans walked back to the fixture where the foot massager had been placed. Evans picked it up, and the two left the store and exited into the mall without paying for the foot massager.

Benicewicz immediately pursued the defendant and Evans into the mall and requested that they return to the store. Evans indicated that he would not return to the store, and the defendant stated that they had purchased the foot massager. The defendant also informed Benicewicz that she would not return to the store. The defendant then loudly threatened Benicewicz by stating that if he touched Evans, she "would blow his brains out." Evans subsequently dropped the foot

---

[1] The defendant also briefed the issue of whether the court improperly failed to vacate her conviction for conspiracy to commit larceny in the sixth degree following her conviction of conspiracy to commit robbery in the first degree. The defendant withdrew this issue at oral argument.

massager, and he and the defendant began walking away.

At this point, Benicewicz and Quazi followed the defendant and Evans to the parking lot where they entered a motor vehicle and drove away. Benicewicz wrote down the license plate of the vehicle and contacted the Danbury police department.

The defendant subsequently was arrested and charged with robbery in the first degree, threatening in the second degree, larceny in the sixth degree, conspiracy to commit robbery in the first degree, conspiracy to commit robbery in the second degree and conspiracy to commit larceny in the sixth degree. The jury found the defendant not guilty on the charges of robbery in the first degree and threatening in the second degree. The jury found the defendant guilty of the lesser included offense of robbery in the third degree, larceny in the sixth degree, conspiracy to commit robbery in the first degree and conspiracy to commit larceny in the sixth degree. The court denied the defendant's postverdict motion for a judgment of acquittal and imposed a total effective sentence of five years incarceration, execution suspended after thirty months, and five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to sustain her conviction for robbery in the third degree and conspiracy to commit robbery in the first degree.[2] Specifically, she claims that there was

_____

[2] We begin with this issue because if the defendant prevails on the sufficiency claim, she is entitled to a directed judgment of acquittal rather than to a new trial. See *State* v. *Calabrese*, 279 Conn. 393, 401, 902 A.2d 1044 (2006); see also *State* v. *Smith*, 73 Conn. App. 173, 178, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002); *State* v. *Theriault*, 38 Conn. App. 815, 823 n.7, 663 A.2d 423 ("[a]lthough we find the defendant's [jury charge claim] dispositive, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge if she prevails on this claim"), cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995).

insufficient evidence for the jury to conclude that her statement to Benicewicz was made with the intent of retaining the foot massager after the taking and that this statement alone was insufficient to constitute a robbery. We are not persuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . .

It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 32–34, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006). With these principles in mind, we address each of the defendant's arguments in turn.

## A

The defendant first contends that her statement that she would "blow [Benicewicz'] brains out" was not made with the purpose of retaining the foot massager and, therefore, there was insufficient evidence to sustain her conviction for robbery in the third degree. In support of her claim, she relies heavily on *State* v. *Coston*, 182 Conn. 430, 438 A.2d 701 (1980). The state responds that *Coston* is not controlling and that the defendant's threat toward Benicewicz constituted sufficient evidence to support her conviction for robbery. We agree with the state.

As a preliminary matter, we set forth the elements of robbery in the third degree. Section 53a-136 (a) provides that "[a] person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133." General Statutes § 53a-133 provides that "[a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." This court has explained that "[r]obbery occurs when a person, in the course of committing a larceny, uses or threatens the immediate use of physical force upon the victim. . . . While there is no definition of the word threaten in the statutes, General Statutes § 1-1 (a) provides that the commonly approved usage of the language should control. . . . A threat is 1. an indication of something impending and usually undesirable or unpleasant . . . 2. something that by its very nature or relation to another threatens the welfare of the latter. . . . A threat has also been defined as any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action [which] alone constitutes consent." (Citations omitted; internal quotation marks omitted.) *State* v. *Littles*, 31 Conn. App. 47, 54, 623 A.2d 500, cert. denied, 227 Conn. 902, 630 A.2d 72 (1993); see also *State* v. *Preston*, 248 Conn. 472, 478, 728 A.2d 1087 (1999).

In the present case, both Quazi and Benicewicz testified that the defendant made the statement that she would "blow [Benicewicz'] brains out" seconds after she and Evans had left the store and while Evans

retained physical possession of the foot massager outside of the store. "It is well established that, under . . . § 53a-133, *if the use of force [or threat of force] occurs during the continuous sequence of events surrounding the taking or attempted taking, even though some time immediately before or after, it is considered to be in the course of the robbery or the attempted robbery within the meaning of the statute.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Ghere*, 201 Conn. 289, 297, 513 A.2d 1226 (1986); see also *State* v. *Crosswell*, 223 Conn. 243, 250–51, 612 A.2d 1174 (1992); *State* v. *Gordon*, 185 Conn. 402, 410–11, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Sam*, supra, 98 Conn. App. 36 n.20; *State* v. *Richardson*, 66 Conn. App. 724, 737–38, 785 A.2d 1209 (2001); *State* v. *Wallace*, 56 Conn. App. 730, 740–42, 745 A.2d 216, cert. denied, 253 Conn. 901, 753 A.2d 939 (2000); *State* v. *Rodriguez*, 39 Conn. App. 579, 598–99, 665 A.2d 1357 (1995), rev'd on other grounds, 239 Conn. 235, 684 A.2d 1165 (1996) ; *State* v. *Channer*, 28 Conn. App. 161, 172, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992). Under the facts and circumstances of the present case, it was well within the province of the jury, as the trier of fact, to conclude that the defendant's threat was made during the continuous sequence of events surrounding the taking of the foot massager.

We further conclude that the defendant's reliance on *State* v. *Coston*, supra, 182 Conn. 430, is misplaced. In that case, the defendant and his accomplice entered a shoe store. Id., 433. The manager noticed the accomplice exchange the shoes that she had worn into the store with a pair from the rack. Id. The manager further observed that the defendant had placed a pair of shoes in his back pocket. Id. After following the defendant out of the store, the manager requested that he return, which he did reluctantly. Id. The defendant then threw

the purloined shoes on the ground and attempted to leave the store. Id. The defendant eventually struck the manager in the face and shoved her. Id. The defendant and his accomplice exited the store and were followed by a store employee. Id. The defendant then stopped, took out a gun, pointed it at the employee and uttered a threat. Id., 434. On appeal, our Supreme Court concluded that there was insufficient evidence to sustain the defendant's conviction for attempt to commit robbery in the first degree. Specifically, the court reasoned: "[A]fter the defendant completed the larceny he returned to the store and threw the shoes on the floor. Thus the later sequence of his acts does not form part of the same continuous transaction as the earlier larceny unless the defendant intended to keep or regain the shoes. Only in that circumstance could the aggravating conduct occur in the course of the commission of the crime or of immediate flight therefrom. . . . The state . . . introduced no evidence that the defendant intended or attempted to retrieve the shoes he had thrown on the floor inside the store. Thus, in view of the call to the police and the defendant's motivation to avoid an arrest for the larceny, which he completed the first time he left the store, his struggle before leaving the store again and his later threat do not strongly corroborate the criminal purpose required for robbery." (Citations omitted; internal quotation marks omitted.) Id., 436.

In our view, *Coston* is factually distinguishable from the present case. Contrary to the facts of *Coston*, the defendant's threat was made during the same continuous transaction of the larceny. There was evidence, through the testimony of Benicewicz and Quazi that the defendant made her threat while Evans was in possession of the foot massager. Furthermore, their testimony was buttressed by the surveillance videotape, which established the fact that Benicewicz approached

the defendant and Evans within seconds of their departure from the store. In other words, the jury reasonably could have found that the threat was part of the same continuous transaction as the larceny. We therefore reject the defendant's argument that *Coston* controls the resolution of this appeal.

B

The defendant further argues that her statement alone was insufficient to constitute a robbery and therefore her conviction for robbery in the third degree and conspiracy to commit robbery in the first degree must be reversed. Specifically, she contends that her threat was not accompanied by any conduct representing that she possessed a firearm. We conclude that this argument is without merit.

With respect to her conviction for robbery in the third degree, we note that the use or threatened use *of a firearm* is not an element of that crime. As we previously indicated, § 53a-133 provides in relevant part that a robbery in the third degree is committed when a person "threatens the immediate use of physical force . . . ." General Statutes § 53a-133; see also *State* v. *Littles*, supra, 31 Conn. App. 54 (robbery occurs when person in course of committing larceny uses or threatens use of physical force). As we have discussed, the jury heard evidence that the defendant threatened Benicewicz by stating that she would "blow his brains out." We conclude, therefore, that there was sufficient evidence to sustain the defendant's conviction for robbery in the third degree.

The defendant also argues that her conviction for conspiracy to commit robbery in the first degree was based on insufficient evidence due to the absence of any conduct that she possessed a firearm. As the state points out in its brief, this claim is contrary to the plain language of the statute. "Pursuant to § 53a-134 (a) (4),

a person is guilty of robbery in the first degree when, in the commission of the crime of robbery, that person displays *or threatens the use of what he represents by his words or actions to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.* This portion of the statute is satisfied when the state has proven beyond a reasonable doubt that the defendant represented by his words or conduct that he has a firearm; *the state need not prove that the defendant actually had a gun. State* v. *Dolphin,* 195 Conn. 444, 449, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Hawthorne,* 175 Conn. 569, 573, 402 A.2d 759 (1978)." (Emphasis added; internal quotation marks omitted.) *State* v. *Hansen,* 39 Conn. App. 384, 401, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995) The jury therefore was free to conclude that the defendant threatened the use of a firearm when she indicated to Benicewicz that she would "blow his brains out."

## II

The defendant next claims that the court improperly instructed the jury as to the crime of conspiracy to commit robbery in the first degree. Specifically, she argues that the court failed to instruct the jury that in order to convict her of this offense, it had to find that she had intended to commit the crime of robbery in the first degree. She further maintains that because the court's instruction failed to include an element of the crime of conspiracy to commit robbery in the first degree, she was denied due process of law. We agree.

The following additional facts are necessary for our review. The court instructed the jury as to the substantive offenses of robbery in the first degree, threatening in the second degree and larceny in the sixth degree, as well as the doctrine of accessorial liability. The court then addressed the inchoate offense of conspiracy.

After reading the text of § 53a-48 (a) to the members of the jury, the court stated: "To constitute the crime of conspiracy, the state must prove the following elements beyond a reasonable doubt: (1) there was an agreement between the defendant and one or more persons to engage in conduct constituting a crime; (2) there was an overt act in furtherance of the subject of the agreement by any one of those persons; and (3) there was the intent on the part of the defendant that conduct constituting a crime be performed." There was no instruction to the jury that the defendant must have intended to commit the crime of robbery in the first degree.

Following the instructions on lesser included offenses, affirmative defenses and other matters, the court explained to the jury that "[s]imilar to counts one, two and three of the information, you must be unanimous in your verdict on court four of the information. If you find the defendant guilty of conspiracy, the clerk will then inquire whether your verdict was to conspiracy as to robbery in the first degree, robbery in the second degree and, or, larceny in the sixth degree."

As a preliminary matter, we note that the defendant concedes that this claim was not preserved at trial. She therefore seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

(Emphasis in original; internal quotation marks omitted.) *State* v. *Little*, 88 Conn. App. 708, 712, 870 A.2d 1170, cert. denied, 274 Conn. 916, 879 A.2d 895 (2005). We agree with the defendant that the record is adequate for our review.[3] Furthermore, the defendant's claim is of constitutional magnitude. "It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . A claim that the trial court failed to instruct the jury adequately on an essential element of the crime charged necessarily involves the defendant's due process rights and implicates the fairness of his trial." (Internal quotation marks omitted.) *State* v. *Felder*, 95 Conn. App. 248, 258, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006); *State* v. *Barksdale*, 79 Conn. App. 126, 131, 829 A.2d 911 (2003). We therefore turn to the third prong of *Golding*, which requires the defendant to establish that the alleged constitutional violation clearly exists and clearly deprived her of a fair trial.

"We begin by noting that an improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial, and thus require the reversal of a conviction based upon that instruction. . . . When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's

---

[3] The audiotape of the trial containing the final arguments of the parties and the court's oral instructions to the jury was lost. On December 15, 2005, the defendant filed a motion for rectification pursuant to Practice Book § 66-5 and requested a hearing in order to reconstruct the record. The state did not object to the defendant's motion, which was granted by the court on December 22, 2005. Following a hearing, the court issued a rectification of the record dated February 17, 2006. The court noted that it read the charge to the jury from its written instructions.

charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State v. Smith*, 70 Conn. App. 393, 398, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002).

Our Supreme Court has stated: "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . *Thus, [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State v. Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005); *State v. Booth*, 250 Conn. 611, 657–58, 737 A.2d 404 (1999), cert. denied sub nom. *Brown v. Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000); *State v. Beccia*, 199 Conn. 1, 3–4, 505 A.2d 683 (1986); see also *State v. Smith*, supra, 70 Conn. App. 398; *State v. Sweeney*, 30 Conn. App. 550, 558, 621 A.2d 304, cert. denied, 225 Conn. 927, 625 A.2d 827 (1993); *State v. Estrada*, 28 Conn. App. 416, 421, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992).

In the present case, the jury was not instructed that in order to convict the defendant of conspiracy to commit robbery in the first degree, it was required to conclude that the defendant and Evans conspired to bring about

the elements of robbery in the first degree.[4] The jury was instructed only that it had to find that the defendant had the specific intent to violate the law or agreed to engage in conduct constituting a crime. The court's instruction was that the defendant could not be found guilty unless the state proved beyond a reasonable doubt that she had specific intent to violate the law. The flaw in this instruction is the failure to identify or specify precisely what "law" the jury had to find that the defendant intended to violate in order to return a verdict of guilty. Cf. *State* v. *Channer*, supra, 28 Conn. App. 173–75 (rejecting defendant's claim that instruction permitted conviction for conspiracy to commit robbery in first degree on basis of general intent because court informed jury that state needed to prove beyond reasonable doubt that defendant had specific intent to violate law that was object of conspiracy and crimes alleged in information); *State* v. *Giannotti*, 7 Conn. App. 701, 707–708, 510 A.2d 451 (jury instruction proper where, despite indicating defendant guilty if jury found he had committed crime, on three occasions during instruction on conspiracy charge, court stated clearly that jury obligated to find defendant guilty of conspiring to commit sexual assault in first degree in order to convict him of that offense), cert. denied, 201 Conn. 804, 513 A.2d 700 (1986). The court's instruction failed to adapt the general legal principles of the offense of conspiracy to the specific facts of the case. Because different theories of criminal liability were set forth in the information, coupled with the various lesser included offenses that the jury was to consider, we

---

[4] The elements of robbery in the first degree are "(1) that the defendant or another participant in the crime was in the course of committing the crime of robbery or of immediate flight therefrom and (2) that the defendant or another participant in the crime displayed or threatened the use of what he represented by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." *State* v. *Osoria*, 86 Conn. App. 507, 511, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

conclude that the defendant has established that it was reasonably possible that the jury was misled by the court's instructions.

We turn to the fourth prong of *Golding* and consider whether the state has established that the defect in the charge was harmless beyond a reasonable doubt. "If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. *Rose* v. *Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). Further, a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence,* such that the jury verdict would have been the same absent the error . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 166–67.

We cannot conclude that the evidence in the present case was so overwhelming as to render the improper instruction harmless. First, the jury found the defendant not guilty of the substantive offenses of robbery in the first and second degrees. The jury, however, concluded that the defendant had committed the offense of robbery in the third degree. The sole difference between robbery in the first degree and robbery in the third degree is the element of displaying or threatening the use of what an individual represents by his or her words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. As a result of its verdict,

the jury necessarily must have concluded that the defendant did not engage in that conduct, otherwise, the jury would have returned a verdict of guilty for the substantive offense of robbery in the first degree rather than the lesser included offense of robbery in the third degree. Moreover, there was no overwhelming evidence that Evans, the defendant's coconspirator, had or purported to have a firearm of any sort. Accordingly, we conclude that the state has failed to establish harmless error beyond a reasonable doubt. We therefore reverse the defendant's conviction of conspiracy to commit robbery in the first degree.

## III

The defendant's final claim is that her rights against double jeopardy were violated when she was convicted of the crimes of robbery in the third degree and larceny in the sixth degree. Specifically, she contends that larceny in the sixth degree is a lesser included offense of robbery in the third degree. We are not persuaded.

Our Supreme Court has stated: "The double jeopardy clause of the fifth amendment to the United States constitution, which is applicable to the states through the due process clause of the fourteenth amendment, protects against multiple punishments for the same offense in a single trial. . . . We have also held that the due process guarantees of article first, § 9, of the Connecticut constitution include protection against double jeopardy." (Citations omitted.) *State* v. *Whipper*, 258 Conn. 229, 288, 780 A.2d 53 (2001), overruled in part on other grounds by *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004). "It is well established that if two offenses stand in the relationship of greater and lesser included offense, then [t]he greater offense is . . . by definition the same for purposes of double jeopardy as any lesser offense included in it." (Internal quotation marks omitted.) *State* v. *Flynn*, 14 Conn. App. 10, 17, 539 A.2d

1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In conducting this inquiry, we look only to the relevant statutes, the information, and the bill or particulars, not to the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Denson*, 67 Conn. App. 803, 808–809, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002); see also *State* v. *Quint*, 97 Conn. App. 72, 78–79, 904 A.2d 216, cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006); *State* v. *Jeffreys*, 78 Conn. App. 659, 681–82, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). The state concedes that the charges arose from the same act, the theft of the foot massager. We must, therefore, examine the information and relevant statutes to determine if each contains an element that the other does not.

The amended substitute long form information charged the defendant with robbery in the first degree and alleged in relevant part that "at the Town of Danbury, on or about the 29th day of February, 2004, at or about 6:30 p.m. at and near the J.C. Penney store, 7 Backus Ave. the said [defendant], in the course of the

commission of the crime of robbery and of immediate flight therefrom . . . was aided by another person actually present and she and another participant in the crime used and threatened the use of what was represented to be by words and conduct a firearm, in violation of § 53a-134 (a) (4) of the Connecticut General Statutes."

As we have noted, robbery requires that a larceny be perpetrated by the use or threatened use of immediate physical force. *State* v. *Leggett*, 94 Conn. App. 392, 402, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006); see also *State* v. *Crosswell*, supra, 223 Conn. 250; *State* v. *Hall*, 66 Conn. App. 740, 751, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002); *State* v. *Richardson*, supra, 66 Conn. App. 738. We have stated that "a conviction for robbery in the third degree . . . only requires proof of a simple larceny together with the use or threatened use of force." *State* v. *De Matteo*, 13 Conn. App. 596, 604, 538 A.2d 1068 (1988); see *State* v. *Evans*, 44 Conn. App. 307, 312, 689 A.2d 494, cert. denied, 240 Conn. 924, 692 A.2d 819 (1997).[5] We also have stated that the use of force is the element of the crime of robbery absent from the crime of larceny. See *State* v. *Hall*, supra, 751. We must now determine if the crime of larceny in the sixth degree, as charged in the information, contains an element not required to be convicted of robbery in the third degree.

The information charged the defendant with larceny in the sixth degree and stated in relevant part that "at the town of Danbury, on or about the 29th day of February, 2004, at or about 6:30 p.m. at and near the J.C. Penney store, 7 Backus Ave. the said [defendant], committed the crime of larceny of property, to wit: a

---

[5] "Conviction of a simple larceny requires proof of the taking of the property of another with the intent to deprive the owner of possession permanently." *State* v. *Crump*, 201 Conn. 489, 493, 518 A.2d 378 (1986).

[foot massager], and the value of the property was two hundred and fifty dollars or less, in violation of §§ 53a-125b (a) and 53a-119 (9) of the Connecticut General Statutes." Section 53a-119 (9) defines larceny by shoplifting and provides in relevant part: "A person is guilty of shoplifting who intentionally takes possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use, without paying the purchase price thereof." In order to convict the defendant, the state was required to prove beyond a reasonable doubt that she took possession of the foot massager that had been offered or exposed *for sale by a store* with the required intent and without paying the purchase price. The element of taking possession of an item from a store is not an element of robbery in the third degree, and, therefore, no double jeopardy violation exists. See, e.g., *State* v. *Wright*, 246 Conn. 132, 142, 716 A.2d 870 (1998) (no double jeopardy violation where defendant convicted of simple robbery and larceny from person because they constitute two separate and distinct crimes); *State* v. *Littles*, supra, 31 Conn. App. 55–58 (no double jeopardy violation where defendant convicted of robbery in second degree and larceny in second degree because larceny charge required that property be taken from person of another); *State* v. *De Matteo*, supra, 13 Conn. App. 601–605 (no double jeopardy violation where defendant convicted of robbery in third degree and larceny in second degree). We conclude, therefore, that in this case, the crime of larceny in the sixth degree does not constitute a lesser offense included within robbery in the third degree because each offense contains an element that the other does not. Accordingly, the defendant's double jeopardy claim fails.

The judgment is reversed only as to the conviction of conspiracy to commit robbery in the first degree and

the case is remanded for a new trial on that charge. The judgment is affirmed in all other aspects.

In this opinion the other judges concurred.