STATE OF CONNECTICUT *v.*
PAOLINO SANSEVERINO
(SC 17786)
(SC 17787)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued October 16, 2007—officially released May 19, 2009

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's

attorney, and *Paul Rotiroti*, assistant state's attorney, for the appellant in Docket No. SC 17786, appellee in Docket No. SC 17787 (state).

*Jon L. Schoenhorn*, for the appellant in Docket No. SC 17787, appellee in Docket No. SC 17786 (defendant).

*Opinion*

PALMER, J. This case comes to us on the state's motion for reconsideration en banc. In *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008),[1] this court concluded, inter alia, that the defendant, Paolino Sanseverino, was entitled to reversal of his first degree kidnapping conviction in light of our decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008).[2] In particular, we determined, in accordance with *Salamon*,[3] that the defendant was entitled to a jury instruc-

---

[1] As we explain more fully in part I of this opinion, in *State* v. *DeJesus*, 288 Conn. 418, 436–37, 953 A.2d 45 (2008), we overruled *Sanseverino* to the extent that *Sanseverino* held that a judgment of acquittal could serve as a proper remedy for the reversal of a kidnapping conviction on the ground that the jury had not been instructed in accordance with our holding in *State* v. *Salamon*, 287 Conn. 509, 547–48, 949 A.2d 1092 (2008).

[2] After a jury trial, the defendant was convicted of one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), and one count of attempt to commit sexual assault in the first degree in violation of § 53a-70 (a) (1) and General Statutes § 53a-49 (a) (2). This opinion addresses the defendant's kidnapping conviction only and supersedes our opinion in *State* v. *Sanseverino*, supra, 287 Conn. 608, with respect to the parties' claims pertaining to that conviction. We reaffirm our opinion in *Sanseverino* in all other respects.

[3] In *Salamon*, this court held that, "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. In other words, "a defendant may be convicted of both kidnapping and another substantive crime [only] if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence

tion that he could not be convicted of the crime of kidnapping unless the jury found beyond a reasonable doubt that the restraint involved in the commission of that crime was not merely incidental to and necessary for the commission of another crime against the victim, in this case, sexual assault in the first degree. *State* v. *Sanseverino*, supra, 624–26. We also held that the state was barred from retrying the defendant on the kidnapping charge because we concluded, on the basis of our review of the record, that no reasonable jury could have found that the restraint used by the defendant in the commission of the kidnapping was not incidental to and necessary for the commission of the sexual assault. See id., 625.

Following the release of our opinion in *Sanseverino*, the state filed a motion for reconsideration en banc, which we granted.[4] In its motion,[5] the state first contends that this court improperly barred the state from seeking to retry the defendant for kidnapping in the

reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 547–48. Although the defendant in the present case did not raise a claim similar to the claim raised in *Salamon*, he nevertheless is entitled to the benefit of our holding in *Salamon* because his appeal was pending when we issued our opinion in *Salamon*.

[4] *Sanseverino* was decided by a five member panel of this court consisting of Chief Justice Rogers and Justices Norcott, Katz, Palmer and Zarella. Upon our granting of the state's motion for reconsideration en banc, Justices Vertefeuille and Schaller were added to the panel, and they have read the record, briefs and transcript of the oral argument in *Sanseverino*.

[5] We note that the defendant has not filed a response to the state's motion for reconsideration en banc.

first degree by ordering that a judgment of acquittal be rendered on that charge. Second, the state contends that, if it elects not to retry the defendant for kidnapping, it nevertheless is entitled to a judgment of conviction of unlawful restraint in the second degree under General Statutes § 53a-96 as a lesser included offense of kidnapping in the first degree. As this court recently has acknowledged; see *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008); the state is correct that, in *Sanseverino*, we improperly precluded the state from seeking to retry the defendant on the kidnapping charge. We therefore reverse that portion of our judgment in *Sanseverino* ordering that a judgment of acquittal be rendered on that charge. We also agree with the state that, as an alternative to retrying the defendant on the first degree kidnapping charge, it is entitled to a judgment of conviction of the lesser included offense of unlawful restraint in the second degree.[6]

The facts that the jury reasonably could have found are set forth in this court's opinion in *State* v. *Sanseverino*, supra, 287 Conn. 608. " 'In June or July, 1998, the defendant, the owner of Uncle's Bakery in Newington, hired C to work in the bakery. . . . One day, toward the end of her shift, while she was alone with the defendant, the defendant asked C to take a box into the back room. The defendant followed C into the back room, grabbed her by her shoulders and pushed her against a wall and a metal shelving unit. She could not move because the defendant had one arm and his upper body pressed against her. The defendant pulled her shirt out of her pants, put his hand under her shirt and touched

---

[6] We note that it is not entirely clear from the state's motion for reconsideration en banc whether the state seeks this relief alternatively or in addition to the opportunity to retry the defendant on the kidnapping charge. Because it arguably would be unfair or otherwise inappropriate to permit the state to retry the defendant for first degree kidnapping *and* to direct a judgment of conviction of the lesser included offense of unlawful restraint in the second degree, we treat the state's motion as a request for alternative relief.

her breasts. She tried to push him away and told him three or four times to stop, but he told her that "he could do whatever he wanted to [her] because he had friends in the Newington police department, and it would be [her] word against his. Nobody would believe [her]." He then unbuttoned her jeans, pulled them down and digitally penetrated her vagina. He unbuttoned his pants and pulled out his penis. He turned C around and held her down by the back of the neck, pinning her with her head between the shelving unit and the wall. He tried to insert his penis into her vagina, but because she kept moving around, he did not successfully penetrate her, although she did feel the pressure of him trying to insert himself.

" 'At that point, the buzzer rang at the front door, indicating that a customer had entered the store. The defendant turned C around, put his hand over her mouth, pushed her against the wall and told her to stay there and to be quiet. When the defendant left to assist the customer, C ran out of the bakery and went home. She never returned to the bakery. At home, C went into the bathroom, took off her clothes and showered. She later burned her clothing. She testified that her initial intention was to call the police but that when she got home, her boyfriend had three other people with him, and she did not want them to know, so she did not tell anyone or call the police at that time. She did not tell anyone what had happened to her until "a couple of months later." C testified that after what happened, she was angry always, and if she was not working, she was sleeping. She said that she would not talk to anybody or let anybody touch her, and she would not let anybody be around her. Her boyfriend's mother, with whom C was residing, eventually asked her about her behavior and mood, and C "finally broke down and told her what had happened at the bakery."

" 'On November 8, 1998, C contacted Peter Lavery, an officer with the Newington police department, to report that she had been sexually assaulted sometime in June or July, 1998, by the defendant at Uncle's Bakery. She gave a sworn statement of what had occurred. Later that same day, she contacted Lavery and said that she did not want to press charges against the defendant and did not want to go through any further investigation of the case because it would be too stressful for her to go to court and [to] go through the court proceedings. In August, 1999, however, after being informed that a second rape victim, G, had come forward, C agreed to reinstate her case against the defendant. C and G did not know each other.

" 'In the fall of 1998, G became a regular customer at Uncle's Bakery. In the spring of 1999, she approached the defendant about working at the bakery and was hired to work from 5 a.m. to 7:30 a.m. In May, 1999, as G started her shift at 5 a.m., she went into the back room of the bakery to get her apron. The defendant followed her in and grabbed her. She told him to "get away and stop," to which the defendant replied, "[you] know you want it, so stop." The defendant grabbed G's arms, pushed her against the wall, pinned her arms over her head with his arm, and pressed his body against [her body] so she could not move. She twice yelled at him to stop, but he did not. She testified that she became afraid and that she froze. While still keeping her pinned [with one hand], he pulled her pants down, then pulled his pants down. He inserted his penis inside her vagina and then, prior to climaxing, pulled out and ejaculated on the floor. The defendant let G go, and she went into the bathroom, locked herself in and did not come out again until she heard another person enter the bakery. G then came out of the bathroom, waited until her shift was over and went home. She threw away her clothes. She did not talk to anybody about what had happened

because, she testified, she felt ashamed, dirty, cheap and scared because the defendant had threatened her. She testified that he had told her [on numerous occasions] that "he was with the family, the mob, and that if [she] ever said anything . . . he would take care of [her] and [her] family." G continued to work at the bakery for about one week because she was afraid of the defendant. After one week, she . . . quit because she "could [not] stand to see [the defendant] anymore." At some point, G told her former husband and her sister what had happened. She was advised not to say or do anything "because it would cause a scandal" and because her sister and her sister's husband "were in the process of buying the business from the defendant." She testified that if she had said anything, "they might have lost the business." In July, 1999, however, G reported the sexual assault when she found out that the defendant was "smearing [her] name, saying that [she] was doing sexual favors for other men." This made her angry and determined that "he's not going to get away with this." . . . The defendant subsequently was charged in connection with both incidents.'" Id., 613–16.

Our opinion in *Sanseverino* also sets forth the following additional undisputed facts and procedural history. "The state separately . . . charged the defendant with kidnapping in the first degree with respect to C and G. Prior to trial, upon agreement of the state, the trial court dismissed the charge of kidnapping in the first degree as to C, which the defendant claimed had been brought beyond the statute of limitations. The trial court denied the defendant's motion to have the charges relating to C and G tried separately pursuant to Practice Book § 41-18. At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal, which the trial court also denied. During the presentation of his case, the defendant claimed that he had dated both

C and G for a period of time and that any sex with [them] was consensual. The jury subsequently returned a verdict of guilty on all four counts of the substitute information: sexual assault in the first degree and attempt to commit sexual assault in the first degree as to C, and kidnapping in the first degree and sexual assault in the first degree as to G. The trial court sentenced the defendant to a total term of forty years imprisonment. The defendant appealed from the judgment of conviction to the Appellate Court.

"The Appellate Court determined that the trial court improperly had denied the defendant's motion to sever the charges relating to C and G, concluding that the defendant had been prejudiced substantially by the consolidation of the two cases, because—viewed through the lens of our holding in *State* v. *Ellis*, 270 Conn. 337, 377, 852 A.2d 676 (2004), that the crime of sexual assault is inherently violent in nature, regardless of whether there is physical violence—the two cases did not involve discrete and easily distinguishable factual scenarios. *State* v. *Sanseverino*, [98 Conn. App. 198, 205, 907 A.2d 1248 (2006)]. That court further concluded that this prejudice had not been cured by the trial court's instructions to the jury. Id., 206–208. It therefore reversed the defendant's conviction and remanded the case for new separate trials. Id., 208. The Appellate Court rejected, however, the defendant's contention that the kidnapping statute was void for vagueness as applied to the facts of his case. Id., 213. The Appellate Court determined that the amount of restraint applied to G was 'not minuscule' and that all that is required under the kidnapping statute is a 'restriction of movement . . . with the intent to prevent the victim's liberation.' Id.

"We thereafter granted the defendant's petition for certification to appeal [limited to the following issue]: 'Did the Appellate Court properly conclude that [Gen-

eral Statutes] § 53a-92 (a) (2) (A), kidnapping in the first degree, is not unconstitutionally vague as applied to the defendant's conduct?' . . . *State* v. *Sanseverino*, 280 Conn. 945, 946, 912 A.2d 481 (2006) . . . . [We also] granted the state's petition for certification to appeal on the following issue: 'Whether the Appellate Court properly held that the trial court improperly denied the defendant's motion to sever the two cases charged against him?' *State* v. *Sanseverino*, 280 Conn. 946, 912 A.2d 481 (2006)." *State* v. *Sanseverino*, supra, 287 Conn. 616–18.

With respect to the state's claim on appeal, we concluded that, because the evidence in both cases would have been cross admissible at separate trials to demonstrate a common scheme or plan on the part of the defendant, the Appellate Court improperly determined that the defendant had been unfairly prejudiced by the trial court's denial of his motion to sever the charges concerning the two victims. Id., 628–34. With respect to the defendant's claim on appeal that § 53a-92 (a) (2) (A) is unconstitutionally vague, we concluded that the defendant was entitled to reversal of his first degree kidnapping conviction on a different, nonconstitutional ground, namely, that the jury had not been instructed, as required by *State* v. *Salamon*, supra, 287 Conn. 547–50, that it could not find the defendant guilty of kidnapping in the first degree unless it first found beyond a reasonable doubt that the restraint used to commit the crime of kidnapping in the first degree was not merely incidental to and necessary for the commission of the crime of sexual assault in the first degree. *State* v. *Sanseverino*, supra, 287 Conn. 620, 623–24; see footnote 3 of this opinion. We also concluded that the defendant was entitled to a judgment of acquittal on the kidnapping charge because our review of the evidence indicated that no reasonable jury could have found the defendant guilty of kidnapping in light of our holding

in *Salamon*. *State* v. *Sanseverino*, supra, 624–26. We expressly noted, moreover, "that the state ha[d] not requested that we order the trial court to [render] a judgment of conviction of unlawful restraint in the second degree . . . as a lesser included offense of kidnapping. Therefore, we . . . express[ed] no opinion on whether the state might be entitled to such relief and we reserve[d] judgment on whether to consider that issue should the state raise it in a postappeal motion." (Citation omitted.) Id., 625–26 n.16.

Following the issuance of our opinion in *Sanseverino*, the state filed a motion for reconsideration en banc in which it claims that, by ordering a judgment of acquittal with respect to the defendant's kidnapping conviction, we improperly barred the state from retrying the defendant on that charge.[7] In that motion, the state contends that, as Justice Zarella had maintained in his dissent in *Sanseverino*; id., 648–57 (*Zarella, J.,* dissenting); because we reversed the defendant's kidnapping conviction on the ground of instructional error, and not on the ground of evidentiary insufficiency, the proper remedy is a new trial on the kidnapping charge before a properly instructed jury, and not a judgment of acquittal on that charge. The state also claims that it is entitled to the option of having the trial court render a judgment of conviction of unlawful restraint in the second degree as a lesser included offense of kidnapping in the first degree. The state maintains that this is a proper alternative to a new trial on the charge of kidnapping in the first degree because the jury, having found the defendant guilty of that offense, necessarily found that the state had satisfied all of the elements of the lesser included offense of unlawful restraint in the second degree. The state further maintains that, under

---

[7] We note that the state does not seek reconsideration of our determination in *Sanseverino* that, under *Salamon*, the defendant is entitled to reversal of his conviction of kidnapping in the first degree.

the circumstances of this case, it would not be unfair to the defendant in any way for the trial court to impose a judgment of conviction of that lesser offense. We address each of these claims in turn.

I

With respect to the issue of our remand in *Sanseverino* following our reversal of the defendant's conviction of kidnapping in the first degree, we held that, in light of our recent decision in *State* v. *Salamon,* supra, 287 Conn. 509, the defendant was entitled to a judgment of acquittal on that charge. *State* v. *Sanseverino,* supra, 287 Conn. 625–26. We explained: "Under the facts of [this] case, no reasonable jury could have found the defendant guilty of kidnapping in the first degree on the basis of the evidence that the state proffered at trial. . . .

"[T]he evidence clearly establishe[d] that the defendant restrained G solely for the purpose of sexually assaulting her. Although we have carefully scrutinized the record, transcript, exhibits and briefs, we have found no evidence that the defendant restrained G to any greater degree than that necessary to commit the sexual assault. G walked into the back room of the bakery to get an apron. The restraint occurred thereafter when the defendant grabbed G from behind and pushed her against the wall, pinning her arms over her head with his arm and pressing his body against [her body] to keep her from moving. These actions were clearly undertaken solely for the purpose of allowing the defendant to initiate, and to keep G from moving away from, his sexual advances. None of the restraint that the defendant applied to G was for the purpose of preventing her from summoning assistance nor did it significantly increase the risk of harm to G outside of that created by the assault itself. The defendant released G immediately after he had ejaculated. For these rea-

sons, we conclude that no reasonable jury could have [found] the defendant [guilty] of a kidnapping in light of our holding in *Salamon*."[8] (Citation omitted.) Id., 624–25.

In his dissent in *Sanseverino*, Justice Zarella maintained that, although our holding in *Salamon* mandated reversal of the defendant's kidnapping conviction in *Sanseverino*, that result was compelled not because of evidentiary sufficiency but because the defendant had not received the benefit of the jury instruction that *Salamon* requires. Id., 649–51 (*Zarella, J.*, dissenting). Justice Zarella further explained that, because *Salamon* was decided after the conclusion of the trial in the present case, and because this court previously had rejected the interpretation of our kidnapping statutes that we adopted in *Salamon*, the state could not possibly have anticipated our ruling in *Salamon*, and, therefore, "we [could not] know from the record . . . whether there was additional evidence that the state *could have proffered at trial* to support a kidnapping charge under the new *Salamon* paradigm." (Emphasis added.) Id., 657 (*Zarella, J.*, dissenting). Justice Zarella concluded, therefore, that, to the extent that the state could adduce evidence sufficient to meet the *Salamon* test, it was entitled to retry the defendant on the kidnapping charge. Id., 658 (*Zarella, J.*, dissenting).

The majority in *Sanseverino* responded to Justice Zarella as follows: "Contrary to [Justice Zarella's] assertion that the state 'could have proffered' additional evidence . . . to support the kidnapping charges had it had knowledge of the rule announced in *Salamon*, we have found nothing in the record to indicate that there

---

[8] In *Salamon*, we reversed the defendant's kidnapping conviction and remanded the case for a new trial, concluding that a jury reasonably could find that the defendant's restraint of the victim was not merely incidental to another offense against the victim, in that case, an assault. *State* v. *Salamon*, supra, 287 Conn. 549–50.

was any such evidence. . . . In the absence of any such evidence, it strains the imagination to conceive of a situation in which the state would decline to proffer relevant and material evidence in a criminal prosecution [in which] it bears the burden of proving every element of the crimes charged beyond a reasonable doubt." Id., 625–26 n.16.

Recently, in *State* v. *DeJesus*, supra, 288 Conn. 418, this court reconsidered the question that we had addressed in *Sanseverino*, namely, what is the appropriate remedy when a defendant who is entitled to a jury instruction in accordance with *Salamon* does not receive it? After reviewing the applicable precedent, we concluded that, as in the case of any other harmful instructional impropriety, the appropriate remedy is to reverse the defendant's kidnapping conviction and to remand the case for a new trial. Id., 434. As we explained in *DeJesus*, when the state has presented evidence sufficient to support the defendant's conviction under the legal standard that existed at the time of trial, an unforeseen change in that legal standard, although requiring reversal of the conviction, ordinarily does not also require a judgment of acquittal. Id., 434–36. Rather, the state is entitled to retry the defendant under the new standard because, in such circumstances, "the double jeopardy concerns that preclude the [state] from having a second opportunity to build a case against a defendant when it failed to do so the first time are not present . . . . Any insufficiency in proof was caused by the subsequent change in the law . . . [and] not the [state's] failure to muster evidence." (Internal quotation marks omitted.) Id., 436.

Indeed, in *DeJesus*, we expressly "recognize[d] that in [*Sanseverino*], we reversed the defendant's conviction of kidnapping in the first degree and remanded the case to the trial court with direction to render a judgment of acquittal, reasoning that 'no reasonable

jury could have convicted the defendant of a kidnapping in light of our holding in *Salamon*.' Furthermore, we acknowledge[d] that we explicitly rejected the . . . assertion [of the dissent in *Sanseverino*] that the defendant was entitled to a new trial before a properly instructed jury, rather than a judgment of acquittal, because the state 'had no knowledge when presenting its case to the jury that it was necessary to [establish that the defendant had intended to restrain the victim for a longer period of time or to a greater degree than was necessary to accomplish the underlying crime].' [*State* v. *Sanseverino*, supra, 287 Conn.] 654 (*Zarella, J.,* dissenting)." *State* v. *DeJesus,* supra, 288 Conn. 437. In *DeJesus,* we ultimately concluded that our reasoning and remand order in *Sanseverino,* insofar as they related to the defendant's kidnapping conviction, were wrong and that the proper remedy should have been a new trial. Id. We therefore overruled our conclusion in *Sanseverino* that the defendant was entitled to a judgment of acquittal on the kidnapping charge rather than a new trial. Id. In accordance with our analysis and conclusion in *DeJesus,* we agree with the state that it must be afforded the opportunity to decide whether to retry the defendant on the charge of kidnapping in the first degree;[9] it is not the function of this court to make that decision for the state.[10] Thus, the case must

[9] We take this opportunity to disavow our suggestion in *Sanseverino* that, because the state bears the burden of proving the defendant's guilt beyond a reasonable doubt, we must presume that the state necessarily adduced *all* of the evidence available to it that may be relevant to the defendant's guilt. *State* v. *Sanseverino,* supra, 287 Conn. 625–26 n.16. The state, like any party to any other kind of action, may or may not elect to present such evidence, depending on the particular circumstances of the individual case.

[10] As we also explained in *DeJesus,* however, in light of the facts that were adduced at trial in *Sanseverino,* it appears "unlikely that the state [will be] able to proffer sufficient additional evidence on retrial to satisfy the *Salamon* rule. Nonetheless, it is not the function of this court, as an appellate tribunal, to deprive the state of that opportunity." *State* v. *DeJesus,* supra, 288 Conn. 437–38 n.14; see also id., 478 (*Palmer, J.,* concurring) (observing that, although state has right to seek to retry defendant in *Sanseverino,* "it is extremely unlikely that, because of the factual scenario presented

be remanded to the trial court not with direction to render a judgment of acquittal on the kidnapping charge but, rather, to afford the state the opportunity to retry the defendant on the kidnapping charge.[11]

## II

The state also contends that if it elects not to retry the defendant on the kidnapping charge, it nevertheless is entitled to a modification of the judgment to reflect a conviction of unlawful restraint in the second degree, a lesser included offense of kidnapping in the first degree.[12] Although the state acknowledges that the jury

by [the] case, the state will be able to adduce evidence sufficient to support a conviction of kidnapping in light of the factors . . . announced [by this court] in . . . *Salamon*").

[11] Justice Katz contends that our decision to reconsider the analysis that we employed in *Sanseverino* is inconsistent with our analysis in *Salamon*. In *Salamon*, we concluded, on the basis of the conduct of the defendant in that case, that his restraint of the victim was not necessarily incidental to another crime, namely, his assault of the victim. Id., 549–50. We therefore further concluded in *Salamon* that "[w]hether the defendant's conduct constituted a kidnapping . . . is a factual question for determination by a properly instructed jury." Id., 550. To the extent that any of our language or analysis in *Salamon* suggests that it may be appropriate to engage in a sufficiency of the evidence test to determine whether, following an improper jury instruction, a new trial is warranted, we expressly disavow any such suggestion. As we explained in *DeJesus*, and as we underscore in the present case, the state is entitled to the opportunity to retry the defendant unless the evidence was insufficient to support the defendant's conviction under the legal standard applicable at the time of the first trial; if the evidence *was* sufficient under that standard, then the state is entitled to retry the defendant before a properly instructed jury. See *State* v. *DeJesus*, supra, 288 Conn. 434–37.

[12] The test used for determining whether one crime is a lesser included offense of another crime is "whether it is not possible to commit the greater offense, in the manner described in the information . . . without having first committed the lesser . . . . This . . . test is satisfied if the lesser offense does not require any element which is not needed to commit the greater offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 292, 579 A.2d 84 (1990). As the Appellate Court recently has indicated; see *State* v. *Spencer*, 81 Conn. App. 320, 337-39, 840 A.2d 7 (2004), rev'd in part on other grounds, 275 Conn. 171, 881 A.2d 209 (2005); unlawful restraint in the second degree is a lesser offense included within the offense of kidnapping in the first degree.

never was instructed on the crime of unlawful restraint in the second degree, the state asserts that the jury necessarily found that the defendant had committed that crime by virtue of its finding that the defendant had committed the greater offense of kidnapping in the first degree.[13] The state also maintains that it reasonably could not have been expected to seek a jury instruction on the lesser included offense of unlawful restraint in the second degree because, prior to *Salamon*, which represented an abrupt departure from this court's previous interpretation of our kidnapping statutes, the state had every reason to believe that the jury would find that the defendant had committed the offense of kidnapping in the first degree. The state also relies on *State v. Greene*, 274 Conn. 134, 160–62, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006), in which this court ordered the imposition of a judgment of conviction of a lesser included offense, following the reversal of a conviction of a greater offense, when the record established that, although the jury was not instructed on the lesser offense, the jury necessarily found all of the elements of that lesser offense.[14] In fact, the state suggests that this court's

[13] See *State* v. *Sanseverino*, supra, 287 Conn. 662 n.11 (*Zarella, J.,* dissenting) ("even though the trial court . . . did not expressly instruct the jury on the lesser included offense of unlawful restraint in the second degree, because that crime is a lesser included offense of kidnapping in the first degree and because the trial court instructed the jury on the elements of kidnapping in the first degree, it implicitly instructed the jury on the lesser offense inasmuch as the trial court necessarily instructed the jury on all of the elements comprising the crime of unlawful restraint in the second degree").

[11] "In [*Greene*], the defendant [Mashawn Greene] was charged with, inter alia, murder as an accessory, and the trial court granted the state's request to instruct the jury on what [the state] considered to be the lesser included offense of manslaughter in the first degree with a firearm as an accessory. [*State* v. *Greene*, supra, 274 Conn. 154–55]. On appeal, we concluded that such an instruction was improper because manslaughter in the first degree with a firearm is not a lesser included offense of murder. Id., [158–60]. We rejected [Greene's] contention that the appropriate remedy for this constitutional violation of instructional error was a judgment of acquittal and determined that we could modify the judgment of conviction. Id., 160–62.

holding in *Greene*, at least by implication, reflects the approach that the United States Circuit Court of Appeals for the District of Columbia adopted in *Allison* v. *United States*, 409 F.2d 445 (D.C. Cir. 1969), and that the United States Supreme Court noted in *Rutledge* v. *United States*, 517 U.S. 292, 305 n.15, 306, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996). Under that approach, which does not require the jury to be instructed on the lesser included offense, a judgment of conviction on that lesser offense may be imposed upon reversal of the greater offense when it is clear "(1) that the evidence adduced at trial fails to support one or more elements of the crime of which [the defendant] was convicted, (2) that such evidence sufficiently sustains all of the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused." *Allison* v. *United States*, supra, 451. Finally, the state claims that, in light of the benefit that the defendant has received, namely, the reversal of his kidnapping conviction, which resulted from the fortuity that his case was on appeal

In doing so, we recognized that [t]his court has modified a judgment of conviction after reversal, if the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the defendant of a lesser included offense. Id., 160. We determined that, [b]efore the jury could find the defendant guilty of manslaughter in the first degree with a firearm, the jury necessarily must have found the defendant guilty of manslaughter in the first degree. . . . Therefore, the trial court's improper instruction could not have affected the jury's finding that the defendant was guilty, beyond a reasonable doubt, of the essential elements of manslaughter in the first degree . . . . Id., 161. Significantly, however, in *Greene*, the trial court never instructed the jury that it could find the defendant guilty of manslaughter in the first degree. See id., 155. Rather, the trial court's instruction on the lesser included offense was that the jury could find the defendant guilty of manslaughter in the first degree with a firearm. See id. Nevertheless, we did not conclude that the jury's inability to return explicitly a verdict of guilty of manslaughter in the first degree precluded us from modifying the judgment by directing the trial court to convict the defendant of that crime." (Internal quotation marks omitted.) *State* v. *Sanseverino*, supra, 287 Conn. 660–61 (*Zarella, J.*, dissenting).

when *Salamon* was decided, he will suffer no unfair prejudice if the judgment is modified to reflect a conviction of unlawful restraint in the second degree, a misdemeanor.[15] See General Statutes § 53a-96 (b).

We disagree with the state that the broad issue presented by the state's second claim, that is, whether, and if so, when, an appellate court may order the modification of a judgment in the manner requested in the present case, is settled in this state. Indeed, this court never has addressed the issue directly. Moreover, there is a distinct split of authority on this question among both state and federal courts. Some courts have held that it is appropriate for an appellate court to order the modification of a judgment to reflect a conviction of a lesser included offense, even in the absence of a jury instruction on that lesser offense, when it is not unfair to the defendant to do so. See, e.g., *United States* v. *Hunt*, 129 F.3d 739, 745–46 (5th Cir. 1997) (modification of judgment permissible despite fact that trial court did not instruct jury on lesser included offense if, inter alia, such modification would not result in undue prejudice to defendant); *United States* v. *Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (same); *Allison* v. *United States*, supra, 409 F.2d 451 (same); *Shields* v. *State*, 722 So. 2d 584, 586–87 (Miss. 1998) (same); see also *People* v. *Patterson*, 187 Colo. 431, 437, 532 P.2d 342 (1975) (modification of judgment appropriate because, "[e]ven though the jury was not instructed as to the lesser included offense, the defendant [was] given his day in court," "[a]ll of the elements of the lesser included offense [were] included in the more serious offense," and "[h]is guilt of the lesser included offense [was] implicit and part of the jury's verdict"); *State* v. *Farrad*, 164 N.J. 247, 266, 753 A.2d 638 (2000) ("[a] guilty verdict may be molded to convict on a lesser-included offense . . . if

---

[15] Kidnapping in the first degree, by contrast, is a class A felony. General Statutes § 53a-92 (b).

[the] defendant has been given his day in court, all the elements of the lesser included offense are contained in the more serious offense and [3] [the] defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict" [internal quotation marks omitted]). Other courts have barred such a modification unless the jury has been instructed on the lesser included offense.[16] See, e.g., *United States* v. *Dhinsa*, 243 F.3d 635, 675–76 (2d Cir.) (remand for

---

[16] In one such case, *State* v. *Brown*, 360 S.C. 581, 602 S.E.2d 392 (2004), the court set forth the following comprehensive statement of reasons in support of its conclusion that a jury instruction on the lesser included offense is a necessary prerequisite to the modification of a judgment of conviction. "First, an appellate court does not sit as a [fact finder] in a criminal case and should avoid resolving cases in a manner which appears to place the appellate court in the jury box. . . .

"Second . . . this view preserves the important distinction between an appellate determination [that] the record contains sufficient evidence to support a guilty verdict and a jury determination [that] the [s]tate proved its case beyond a reasonable doubt. . . .

"Third, when [a jury instruction on the lesser offense has been given] . . . it can be said with some degree of certainty that a [sentencing remand] is but effecting the will of the fact finder within the limitations imposed by law . . . and . . . that the appellate court is simply passing on the sufficiency of the implied verdict. When, however, no instruction at all has been offered on the lesser offense, second guessing the jury becomes far more speculative. . . .

"Fourth, when the jury could have explicitly returned a verdict on the lesser offense, the defendant is well aware of his potential liability for the lesser offense and usually will not be prejudiced by the modification of the judgment from the greater to the lesser offense. . . .

"Fifth, adopting a practice of remanding for sentencing on a lesser included offense when that offense has not been submitted to the jury may prompt the [s]tate to avoid requesting or agreeing to submit a lesser included offense to the jury. . . .

"Sixth, the [s]tate would obtain an unfair and improper strategic advantage if it successfully prevents the jury from considering a lesser included offense by adopting an all or nothing approach at trial, but then on appeal, perhaps recognizing [that] the evidence will not support a conviction on the greater offense, is allowed to abandon its trial position and essentially concede [that] the lesser included offense should have been submitted to the jury. . . .

"Seventh . . . [t]he defendant may well have [forgone] a particular defense or strategy due to the trial court's rejection of a lesser included offense." (Citations omitted; internal quotation marks omitted.) Id., 594–97.

modification of judgment to reflect lesser included offense permissible only if jury had been instructed on that offense), cert. denied, 534 U.S. 897, 122 S. Ct. 219, 151 L. Ed. 2d 156 (2001); *United States* v. *Vasquez-Chan*, 978 F.2d 546, 554 (9th Cir. 1992) (same); *Ex parte Roberts*, 662 So. 2d 229, 232 (Ala. 1995) (same); *State* v. *Villa*, 136 N.M. 367, 371, 98 P.3d 1017 (2004) (same); *State* v. *Brown*, 360 S.C. 581, 594, 602 S.E.2d 392 (2004) (same).

Under the unique circumstances of this case, we conclude that the state is entitled to the modification of the judgment that it seeks. We reach this conclusion for several reasons, each of which is integral to our decision. First, there is no reason to believe that the state opted against seeking a jury instruction on the lesser offense of unlawful restraint in the second degree for strategic purposes. As the state has asserted, prior to our decision in *Salamon*—a decision that the state reasonably could not have expected in view of the long line of contrary cases that preceded it—the state had every reason to believe that, if the jury credited the state's evidence, the defendant would be found guilty of the kidnapping charge. In other words, prior to the unforeseeable change in the law following the defendant's trial, the state had no reason to seek a lesser included offense instruction, and, consequently, the state's failure to do so cannot possibly have been the product of a strategic decision. Second, the defendant has benefited from our holding in *Salamon* even though he did not raise the claim that the defendant in *Salamon* raised in his appeal. Third, the defendant has not filed an objection to the state's request for a modification of the judgment. See footnote 5 of this opinion. Finally, we can conceive of no reason why it would be unfair to the defendant to impose a conviction of unlawful restraint in the second degree.[17] In light of all of these

[17] In his dissent, Justice Schaller contends that "the unfairness to a defendant by convicting him of a charge on which the original jury could *not*

circumstances, we believe that it is appropriate to order that the judgment be modified, as the state requests, if the state elects not to retry the defendant for kidnapping.[18]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

have convicted him outweighs whatever disadvantage the state may suffer from its tactical decision [not to seek an instruction on a lesser included offense]. If this rule is not enforced in this situation, this court is, in effect, resolving a case in a manner which appears to place [an] appellate court in the jury box." (Emphasis in original; internal quotation marks omitted.) We disagree. First, there simply is no support for Justice Schaller's assertion that the state's failure to seek a lesser included offense instruction represented a tactical decision. As we have explained, under the law of this state at the time of the defendant's trial, the state had no reason to seek a lesser included offense instruction because this court repeatedly had upheld kidnapping convictions when the restraint necessary for the commission of the sexual assault was sufficient to support the kidnapping conviction. Second, although it is true that the jury could not have found the defendant guilty of unlawful restraint in the second degree in view of the fact that it was not instructed on that charge as a lesser included offense of kidnapping, there can be no doubt that the *jury necessarily* found that the defendant had committed that lesser offense because it found the defendant guilty of the greater crime of kidnapping. Indeed, Justice Schaller does not challenge that fact. Thus, there is no basis for the claim that this court may be viewed as usurping the role of the jury in holding that the state is entitled to a judgment of conviction of the lesser offense of unlawful restraint in the second degree. Indeed, this court routinely engages in far more extensive inquiries into the fact bound decisions of juries. For example, we frequently are called on to determine whether trial error was harmless by evaluating whether that error was likely to have affected the jury verdict. See, e.g., *State* v. *Beavers*, 290 Conn. 386, 396, 963 A.2d 956 (2009) ("[a] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict" [internal quotation marks omitted]). In the present case, in contrast, we make no judgment about the nature or quality of the evidence, or the likely effect that the evidence would have on the jury verdict; on the contrary, we *know* that the jury found that the defendant had committed the crime of unlawful restraint in the second degree.

[18] We emphasize that we intimate no view as to whether the state would be entitled to such a modification in the absence of any one of the factors that are present in this case. We do not doubt that we will have the opportunity to consider that broader issue, sooner rather than later, when our decision actually will make a difference to the outcome of the case. See, e.g., *Kelly* v. *New Haven*, 275 Conn. 580, 602, 881 A.2d 978 (2005) ("[w]e generally eschew . . . making legal pronouncements on matters not directly pre-

sented"). Indeed, as the United States Court of Appeals for the Second Circuit recently has observed, its "failure to address a question that is not necessary to the outcome of a case is simply a wise exercise of [its] discretion. See *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 402, 68 S. Ct. 525, 92 L. Ed. 746 (1948) (Frankfurter, J., concurring in part) ('Deliberate dicta, I had supposed, should be deliberately avoided. Especially should we avoid passing gratuitously on an important issue of public law where due consideration of it has been crowded out by complicated and elaborate issues that have to be decided.')." *United States* v. *Schultz*, 333 F.3d 393, 407 (2d Cir. 2003), cert. denied, 540 U.S. 1106, 124 S. Ct. 1051, 157 L. Ed. 2d 891 (2004). The Second Circuit further stated: "The dangers inherent in a court's reaching out to decide issues not essential to the outcome of the case before it were perhaps most colorfully described by the [nineteenth] century English jurist Lord Justice Bowen, who has been quoted by [the United States] Supreme Court as saying:

"I am extremely reluctant to decide anything except what is necessary for the special case, because I believe by long experience that judgments come with far more weight and gravity when they come upon points which the [j]udges are bound to decide, and I believe that obiter dicta, like the proverbial chickens of destiny, come home to roost sooner or later in a very uncomfortable way to the [j]udges who have uttered them, and are a great source of embarrassment in future cases. *Darr* v. *Burford*, 339 U.S. 200, 214, 70 S. Ct. 587, 94 L. Ed. 761 (1950), overruled in part on other grounds by *Fay* v. *Noia*, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)." (Internal quotation marks omitted.) *United States* v. *Schultz*, supra, 333 F.3d 407 n.8.

Justice Katz nevertheless takes issue with the fact that we limit our holding to the particular facts and procedural history of this case, and that we decline to decide the broader issue presented, namely, under what particular circumstances is it appropriate for an appellate court to require the conviction of a lesser included offense upon reversal of a conviction of the greater offense. In challenging our preference to decide this case more narrowly, Justice Katz ignores several important factors in addition to the foregoing consideration. First, this issue never has been decided expressly by this court or the Appellate Court. Second, courts of other jurisdictions are sharply divided on the issue. Third, because the defendant never responded to the state's motion for reconsideration en banc, we are unable to subject the issue to meaningful adversarial testing. In such circumstances, we believe that prudence militates strongly in favor of the more cautious approach that we take in the present case. For all the same reasons, we disagree with the approach taken by Chief Justice Rogers, who, like Justice Katz, would decide the broader issue raised by this case. With respect to that broader issue, however, Chief Justice Rogers would reach a result that is precisely the opposite of the result that Justice Katz would reach. In our view, the very fact that two members of this court disagree so starkly on that broader question strongly supports the conclusion that it is wiser not to decide the issue until it has been squarely presented and fully briefed. Indeed, neither Chief Justice Rogers nor Justice Katz has offered any reason why it would not be better to await such a case.

reverse the trial court's judgment with respect to the defendant's conviction of kidnapping in the first degree, to affirm the trial court's judgment in all other respects, and to remand the case to the trial court with direction either to order a new trial on the kidnapping charge or to render a judgment of conviction of unlawful restraint in the second degree, at the option of the state.

In this opinion ROGERS, C. J., and NORCOTT, VERTEFEUILLE and ZARELLA, Js., concurred.

ROGERS, C. J., concurring. I join with the majority opinion, but write separately to emphasize that, in my view, allowing the state the option of requesting the modification of the conviction of the defendant, Paolino Sanseverino, on the charge of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), to reflect the lesser included offense of unlawful restraint in the second degree in violation of General Statutes § 53a-96, is appropriate *only* because there was a significant change in this court's construction of the kidnapping statute after the defendant's conviction but before the resolution of his appeal. See *State* v. *Salamon*, 287 Conn. 509, 517–50, 949 A.2d 1092 (2008). I believe that, as a general rule, the modification of a conviction to reflect a lesser included offense is inappropriate unless the jury has received an instruction on the lesser included offense.

As the majority acknowledges, this court never has directly addressed the question of whether it may modify a conviction to reflect a lesser included offense in the absence of a jury instruction on the lesser included offense.[1] Several of our sister jurisdictions, however,

---

[1] In *State* v. *Greene*, 274 Conn. 134, 174, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006), this court modified the judgment to reflect a conviction of a lesser included offense on which the jury had not been instructed. We did not directly address the question, however, of whether such a modification was proper in the absence of an instruction on the lesser included offense.

have recognized that "a defendant not only has a right to lesser-included offense instructions on request, but also has a right to *forego* such instructions for strategic reasons." (Emphasis in original.) *State* v. *Sheppard*, 253 Mont. 118, 124, 832 P.2d 370 (1992); see also *Fair* v. *Warden*, 211 Conn. 398, 404, 559 A.2d 1094 ("[i]t may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict"), cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989). Although some courts have held that the trial court must, sua sponte, instruct the fact finder on lesser included offenses, I would conclude that, "[n]ot only does such a policy impinge on the advocate's role, but the result may be to unfairly surprise both the defense and the prosecution." *State* v. *Sheppard*, supra, 124. "[B]oth prosecution and defense counsel may have made a decision to force the jury to either convict or acquit of the offense charged without being given the opportunity to take the middle ground and convict of the lesser charge . . . ." Id. This is in accord with the "public policy of allowing trial counsel to conduct the case according to his or her own strategy . . . ." Id.; see also *Chao* v. *State*, 604 A.2d 1351, 1358 n.4 (Del. 1992), overruled on other grounds by *Williams* v. *State*, 818 A.2d 906 (Del. 2002); *Hagans* v. *State*, 316 Md. 429, 455, 559 A.2d 792 (1989) ("The better view . . . is that the trial court ordinarily should not give a jury an instruction on an uncharged lesser included offense where neither side requests or affirmatively agrees to such instruction. It is a matter of prosecution and defense strategy which is best left to the parties. There is no requirement that the [fact finder] pass on each possible offense the defendant could have committed.").[2]

---

[2] I recognize that this court has held that, when certain conditions are met, "an instruction on a homicide of a lesser degree than that charged is appropriate, whether requested by the state or the defendant, or given by the court sua sponte." *State* v. *Rodriguez*, 180 Conn. 382, 408, 429 A.2d 919 (1980); see also *State* v. *Prutting*, 40 Conn. App. 151, 165, 669 A.2d 1228 ("the trial court did not deprive the defendant of his right to notice by

These concerns have even greater force when a reviewing court modifies a conviction to reflect a lesser

instructing the jury, even absent a request by either party, on the lesser included offense of manslaughter in the first degree"), cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996). Both of those cases, however, involved General Statutes § 53a-45 (c). *State* v. *Rodriguez*, supra, 399; *State* v. *Prutting*, supra, 164. Section 53a-45 (c) expressly provides that "[t]he court or jury before which any person indicted for murder or held to answer for murder . . . may find such person guilty of homicide in a lesser degree than that charged." Thus, it is arguable that the holdings of *Rodriguez* and *Prutting* apply only to cases in which the defendant has been charged with murder. Moreover, it is unclear whether the trial court in *Rodriguez*, on which the court in *Prutting* relied; *State* v. *Prutting*, supra, 164–65; had given the instruction on the lesser included offense sua sponte. Accordingly, our statement that doing so would be appropriate may have been dictum. Finally, the arguments that the parties should be held to their strategic decisions during trial and that this court should not usurp the role of the prosecutor and the jury were not addressed in either *Rodriguez* or *Prutting*.

In *State* v. *Horne*, 19 Conn. App. 111, 145–46, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990), the Appellate Court modified a judgment of conviction of sexual assault in the first degree with a deadly weapon to reflect a conviction of sexual assault in the first degree even though the jury had not been instructed on the lesser offense. See also *State* v. *Ortiz*, 71 Conn. App. 865, 879, 804 A.2d 937 (modifying conviction of robbery in first degree to reflect lesser included offense of robbery in second degree, even though trial court had not instructed jury on lesser included offense), cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002). In support of its holding in *Horne*, the Appellate Court stated that, "[e]ven in the absence of . . . a request . . . the trial court may, sua sponte, properly submit a lesser included offense to the jury." *State* v. *Horne*, supra, 145; see also *State* v. *Haywood*, 109 Conn. App. 460, 466, 952 A.2d 84, cert. denied, 289 Conn. 928, 958 A.2d 161 (2008). In *Horne*, the Appellate Court relied on *Rodriguez*; see *State* v. *Horne*, supra, 145; in *Ortiz*, the court relied on *Horne*; see *State* v. *Ortiz*, supra, 878; and in *Haywood*, the court relied on *Ortiz*. See *State* v. *Haywood*, supra, 466–67 n.3. As I have indicated, however, I do not believe that *Rodriguez* supports the broad principle that a trial court always may instruct a jury on a lesser included offense sua sponte.

In any event, I would not decide in this case whether it is appropriate for the trial court to give an instruction on a lesser included offense because, even if it is appropriate, I am aware of no authority for the proposition that the trial court is authorized to modify a conviction to reflect a lesser included offense *after* a guilty verdict if no instruction on the lesser included offense was given. For this reason, and for the other reasons stated in this concurring opinion, I disagree with the Appellate Court's conclusion that, "[a]lthough in most of the cases that we have reviewed in which this court or our Supreme Court has modified a judgment to reflect a conviction of a lesser included offense, the jury was instructed on the lesser included offense, we do not believe this factor is critical." *State* v. *Haywood*, supra, 109 Conn. App. 466 n.3.

included offense when the trial court did not instruct the jury on the lesser offense. See *State* v. *Brown*, 360 S.C. 581, 597, 602 S.E.2d 392 (2004) ("the [s]tate would obtain an unfair and improper strategic advantage if it successfully prevents the jury from considering a lesser included offense by adopting an 'all or nothing' approach at trial, but then on appeal, perhaps recognizing the evidence will not support a conviction on the greater offense, is allowed to abandon its trial position and essentially concede the lesser included offense should have been submitted to the jury"); *State* v. *Myers*, 158 Wis. 2d 356, 368, 461 N.W.2d 777 (1990) (allowing appellate court to modify judgment in absence of jury instruction on lesser included offense would allow state to "have all the benefits and none of the risks of its trial strategy, while the accused would have all the risks and none of the protections"). Moreover, when a reviewing court modifies a conviction to reflect a lesser included offense in the absence of a jury instruction, the court is giving effect to a verdict that the prosecutor did not ask for and the original jury could not have rendered. Thus, the court effectively—and, in my view, improperly—is taking on the role both of the prosecutor and of a second jury.[3] See *State* v.

---

[3] In her dissenting and concurring opinion, Justice Katz states that, "[b]ecause there is no question in the present case that the defendant had a fair trial and that the jury properly was instructed on the element of restraint, there is no undue prejudice to the defendant if we reduce his conviction to the lesser offense." In support of this argument she relies on this court's statement in *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979), that, "[s]ince the jury could have explicitly returned . . . a verdict [of guilty of the lesser included offense of larceny in the fourth degree], the defendant was aware of her potential liability for this crime and would not now be prejudiced by modification of the judgment . . . ." In *Saracino*, however, our statement that the jury could have explicitly returned a guilty verdict on the lesser offense was premised on the fact that the trial court had instructed the jury on that offense at the defendant's request. See id. In my view, this court used the word "explicitly" in *Saracino* to distinguish that case from cases in which the jury could return only an implicit verdict of guilty on the lesser included offense by returning a verdict of guilty on the greater offense. In the present case, the jury could not have returned an explicit verdict of guilty of the lesser included offense of

*Brown,* supra, 594–97, and cases cited therein. Accordingly, I believe that if the trial court has given no instruction on a lesser included offense, this court should not modify the judgment to reflect the lesser offense when the judgment on the greater offense has been overturned on appeal as the result of a legal error, and the sole remedy should be a retrial.[4]

unlawful restraint in the second degree because the trial court did not instruct the jury on that offense. In this regard, I believe that the cases in which this court has stated that a charge on a greater offense is constitutionally adequate notice to the defendant that he may be charged with lesser included offenses merely stand for the proposition that the trial court properly may grant a request by the state to instruct the jury on a lesser offense, not that the defendant is on notice that he may be convicted of the lesser offense *in the absence of such an instruction.* See, e.g., *State* v. *Greene,* 274 Conn. 134, 155, 874 A.2d 750 (2005) ("[t]he constitutionality of *instructing* on lesser included offenses is grounded on the premise that whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses" [emphasis added; internal quotation marks omitted]), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006).

[4] If a conviction is overturned because the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt, retrial on that offense and any lesser included offenses would be barred by the double jeopardy clause of the United States constitution. See *Stephens* v. *State,* 806 S.W.2d 812, 819 (Tex. Crim. App. 1990) ("when a defendant has obtained a reversal of a conviction for a greater offense solely on the ground that there was insufficient evidence to prove the aggravating element of that offense, the [d]ouble [j]eopardy [c]lause bars a subsequent prosecution for a lesser included offense"), cert. denied, 502 U.S. 929, 112 S. Ct. 350, 116 L. Ed. 2d 289 (1991); see also *Burks* v. *United States,* 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) ("the [d]ouble [j]eopardy [c]lause precludes a second trial once the reviewing court has found the evidence legally insufficient [and] the only 'just' remedy available for that court is the direction of a judgment of acquittal," not retrial); *In re Nielsen,* 131 U.S. 176, 189, 9 S. Ct. 672, 33 L. Ed. 118 (1889) (stating in dicta that "a conviction or an acquittal of a greater crime is a bar to a subsequent prosecution for a lesser one"); *United States* v. *Gooday,* 714 F.2d 80, 82 (9th Cir. 1983) (if no instructions are given on lesser included offense, "an acquittal on the crime explicitly charged necessarily implies an acquittal on all lesser offenses included within that charge"), cert. denied, 468 U.S. 1217, 104 S. Ct. 3587, 82 L. Ed. 2d 884 (1984); *Andrade* v. *Superior Court,* 183 Ariz. 113, 115, 901 P.2d 461 (1995) ("[d]ouble jeopardy . . . shields [a defendant who has been acquitted of an offense] from subsequent prosecutions for lesser included offenses if the jury has not been instructed on the lesser included offenses"); *People* v. *Biggs,* 1 N.Y.3d 225, 231, 803 N.E.2d 370, 771 N.Y.S.2d 49 (2003) (since defendant "was acquitted of the intentional murder charges at his first trial,

As the majority in the present case suggests, however, when there has been a significant change in the governing law after a defendant has been convicted, the argument that the state should be held to its strategic decision to forgo an instruction on a lesser included offense has much less force because, for reasons that the state could not have foreseen, the rules have been changed mid-game. In such cases, the unfairness to the defendant of convicting him of charges on which the original jury could not have convicted him is outweighed by the unfairness to the state of holding it to its strategic choice when there has been an unanticipated change in the rules. Moreover, there is no claim in the present case that the state failed to prove beyond a reasonable doubt each element of kidnapping under the standard in effect at the time of the trial, on which the jury was properly instructed. Thus, " 'it can be said with some degree of certainty that [the modification of the conviction to reflect the lesser included offense] is but effecting the will of the fact finder within the limitations imposed by law' . . . ." Id., 596. Accord-

and manslaughter in the first degree is the same offense as murder in the second degree under *Blockburger* [v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)], the [double jeopardy clause of the federal constitution] precluded defendant's subsequent indictment and prosecution for first degree manslaughter"); but see *State* v. *Malufau*, 80 Haw. 126, 136, 906 P.2d 612 (1995) (when it was not clear whether jury had been instructed on lesser included offense, court held that "remanding a case for retrial on lesser included offenses following an appellate determination that insufficient evidence to support a conviction of a greater offense was presented at trial does not offend the double jeopardy clause"). I believe that, in such cases, it would be fundamentally unfair and highly prejudicial to the defendant to modify the judgment to reflect a lesser included offense in the absence of a jury instruction because the original jury could not have rendered a conviction on the lesser offense and the defendant cannot be retried. See *Ex parte Roberts*, 662 So. 2d 229, 232 (Ala. 1995) (where defendant's conviction was overturned for insufficient evidence and jury had not been instructed on lesser included offense, court declined to modify conviction to reflect lesser offense). I see no reason why a defendant who was improperly convicted on insufficient evidence should be in a worse position after a successful appeal than if he had received a fair verdict of acquittal in the first instance.

ingly, I agree that, under these unique circumstances, the state should have the option of retrying the defendant or requesting a modification of the judgment to reflect the lesser included offense.

KATZ, J., concurring in part and dissenting in part. I strongly disagree with the majority's reversal of course on an issue that was squarely presented in *State* v. *Sanseverino*, 287 Conn. 608, 650, 949 A.2d 1156 (2008) (*Zarella, J.*, dissenting), the majority now concluding that the defendant, Paolino Sanseverino, is not entitled to a judgment of acquittal on the charge of kidnapping in the first degree with respect to one of his victims, G. In addition, although I agree with the majority's decision to grant the state's motion for reconsideration on the issue of whether the defendant's conviction on that charge should be reduced to the lesser included offense of unlawful restraint in the second degree, I disagree that such a decision is warranted because of the "unique circumstances of this case."

On the first point, the basis of my disagreement, namely, that we properly applied a sufficiency of the evidence analysis in *Sanseverino*, is set forth in detail in my dissenting opinion in *State* v. *DeJesus*, 288 Conn. 418, 528–47, 953 A.2d 45 (2008) (*Katz, J.*, dissenting). It bears repeating, however, that, in *Sanseverino*, we applied the same analytical framework as in *State* v. *Salamon*, 287 Conn. 509, 548–50, 949 A.2d 1092 (2008), wherein we had examined the sufficiency of the evidence to determine whether the defendant was entitled to a judgment of acquittal of kidnapping in the second degree. See *State* v. *Sanseverino*, supra, 287 Conn. 624–26. In *Salamon*, only after we had examined the evidence at length did we conclude that a retrial was warranted because the evidence *actually adduced* could be a sufficient basis for a reasonable jury to find a kidnapping upon a proper instruction under the

revised rule. *State* v. *Salamon*, supra, 514 n.7, 548–50. Although we could have reversed the defendant's conviction in *Salamon* on the basis of instructional error—i.e., he did not have the benefit of an instruction under the rule that we set forth in that case—the court relied exclusively on insufficiency of the evidence. See id., 548–50. *Sanseverino* simply was an application of the *Salamon* rubric that yielded a different outcome. Therefore, I renew my objection to the majority's inconsistent approach in the present case to the *Salamon* framework.

Turning to my second point, the majority grants the state's motion for reconsideration with respect to whether the defendant's conviction of kidnapping in the first degree should be reduced to that of the true lesser included offense of unlawful restraint in the second degree should the state decide not to retry the defendant on the greater offense. I also would grant the state's motion for reconsideration in order to modify the judgment to reflect a conviction of the lesser included offense. Because the majority limits its decision allowing the modification of the judgment in the present case to its "unique circumstances," however, I feel compelled to question the reluctance of my colleagues to embrace a universal rule consistent with well established lesser included offense jurisprudence.

In the present case, the jury necessarily found the defendant guilty of unlawful restraint in the second degree in violation of General Statutes § 53a-96. By instructing the jury on the elements of kidnapping in the first degree, the trial court required, and the jury a fortiori found, that there was an unlawful restraint.[1]

---

[1] The trial court instructed the jury that "[f]or you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: (1) that the defendant abducted the victim; and (2) that the defendant *restrained* the person he abducted with the intent to abuse the person sexually." (Emphasis added.)

Restrain means "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent." General Statutes § 53a-91 (1). In the present case, there is no question that the defendant restricted the victim's movement by nonconsensual force when he sexually assaulted her. Thus, the jury could—and did—reasonably find the elements of the natural lesser included offense of unlawful restraint in the second degree, which merely requires that the state prove that the defendant restrained the victim. See General Statutes § 53a-96 (a) ("[a] person is guilty of unlawful restraint in the second degree when he restrains another person"); see also *State* v. *Vass*, 191 Conn. 604, 618, 469 A.2d 767 (1983) ("definition [of unlawful restraint in the second degree] . . . fall[s] within the ambit of the crime of kidnapping [in the second degree]"); *State* v. *Faria*, 47 Conn. App. 159, 178–79 n.13, 703 A.2d 1149 (1997) (citing *Vass*, and stating that "[f]or the same reason, we hold that unlawful restraint in the second degree falls within the definition of the crime of kidnapping in the first degree"), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

In *State* v. *Grant*, 177 Conn. 140, 147, 411 A.2d 917 (1979), this court first adopted the rule that it "may order the modification of an erroneous judgment where the evidence is insufficient to support an element of the offense stated in the verdict but where the evidence presented is sufficient to sustain a conviction for a lesser included offense." Although the court recognized that "[t]his power should be exercised only when it is clear that no undue prejudice will result to the accused"; (internal quotation marks omitted) id., 148; it determined that no such prejudice occurs if "[t]he defendant has had a fair adjudication of guilt on all the elements

of the crime . . . ." Id. A defendant is deemed to have received such a fair adjudication when the crime "is a lesser included offense of the crime charged, and the [fact finder], under the circumstances of the case, could have explicitly returned such a verdict [and] the defendant was aware of his potential liability for this crime." Id., 148–49; accord *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979) ("[s]ince the jury could have explicitly returned . . . a verdict [of guilty of the lesser included offense of fourth degree larceny], the defendant was aware of her potential liability for this crime and would not now be prejudiced by modification of the judgment"). This court has explained that, "[i]n *State* v. *Grant*, supra, [147], and *State* v. *Saracino*, supra, [421], we held that even though the trial evidence did not support the defendant's conviction of the offense charged, we were free to modify the judgment to reflect a conviction of a lesser crime. We came to this conclusion because the evidence was sufficient to support a conviction of a lesser included offense on which the jury properly had been charged and the jury's verdict necessarily included a finding that the defendant was guilty of that lesser offense. See also *State* v. *Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992); *State* v. *Scielzo*, 190 Conn. 191, 204–205, 460 A.2d 951 (1983); *State* v. *Coston*, 182 Conn. 430, 437, 438 A.2d 701 (1980)." *State* v. *Desimone*, 241 Conn. 439, 460 n.28, 696 A.2d 1235 (1997).

I recognize that most of the cases in which this court has ordered the modification of a judgment to reflect a conviction of a lesser included offense have involved circumstances wherein the jury had been instructed on that lesser included offense. We never have stated, however, that the absence of a jury instruction is an

absolute bar to this court's ability to modify a judgment.[2] Indeed, our modification of the judgment of conviction in *State* v. *Greene*, 274 Conn. 134, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006), undermines any such claim.

In *Greene*, a case in which the defendant had been charged with, inter alia, murder as an accessory, the trial court had granted the state's request to instruct the jury on what it had considered to be the lesser included offense of manslaughter in the first degree with a firearm as an accessory. Id., 154. On appeal, we concluded that the instruction was improper because manslaughter in the first degree with a firearm was not a lesser included offense of murder, as charged in the information. Id., 158–60. In rejecting the defendant's contention that the appropriate remedy for this consti-tutional instructional error was a judgment of acquittal, we determined that it would be proper to modify the judgment of conviction to manslaughter in the first

---

[2] In this regard, I note that one of the decisions in which this court has concluded that it would not prejudice the defendant to reduce his conviction to a lesser included offense does not state whether the jury, through express instructions by the court, had been given the opportunity to consider the lesser included offense. See *State* v. *Edwards*, 201 Conn. 125, 133–34 n.6, 513 A.2d 669 (1986) ("While the evidence was insufficient to sustain the conviction on the second count of the substitute information charging the crime of accessory to robbery in the second degree, it did suffice to sustain a conviction for the lesser included offense of accessory to robbery in the third degree. The jury's verdict on the second count necessarily determined that the state had proven all the elements of accessory to robbery in the third degree beyond a reasonable doubt upon which the trial court instructed the jury. Under the circumstances of this case, the reduction of the defen-dant's conviction on the second count to the lesser included offense cannot prejudice the defendant."). A careful review of the record and briefs in *Edwards* does disclose a statement in the defendant's brief to this court suggesting that the jury did receive an instruction on the lesser offense. Presumably, however, if a jury instruction on the lesser included offense is a necessary predicate to modifying a judgment from the greater offense to a lesser offense, this court's opinion would have reflected that fact expressly. Therefore, in the absence of any such reference, I would conclude the opposite.

degree. Id., 160–62. In doing so, we recognized that "[t]his court [previously] has modified a judgment of conviction after reversal, if the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the defendant of a lesser included offense." Id., 160. We reasoned in *Greene* that, in that particular case, "[b]efore the jury could find the defendant guilty of manslaughter in the first degree with a firearm, the jury necessarily must have found the defendant guilty of manslaughter in the first degree. . . . Therefore, the trial court's improper instruction could not have affected the jury's finding that the defendant was guilty, beyond a reasonable doubt, of the essential elements of manslaughter in the first degree . . . ." (Citations omitted.) Id., 161. Significantly, although the trial court had instructed the jury on manslaughter in the first degree with a firearm, it had not instructed the jury that it could find the defendant guilty of first degree manslaughter. See id., 155. Nevertheless, we did not conclude that the jury's inability to return *explicitly* a verdict of guilty of manslaughter in the first degree precluded us from modifying the judgment by directing the trial court to enter a judgment of conviction on that crime. Accord *State* v. *Coston*, supra, 182 Conn. 437 (reversing for insufficient evidence conviction for attempted robbery in first degree and remanding with direction to modify judgment to reflect conviction of lesser included offense of attempted larceny in fourth degree); see also *State* v. *Ortiz*, 71 Conn. App. 865, 878, 804 A.2d 937 ("even in the absence of a request at trial for a jury instruction on a lesser included offense, an appellate court may invoke the [doctrine enunciated in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980)][3] where the trial court record justifies its applica-

---

[3] In *State* v. *Whistnant*, supra, 179 Conn. 588, this court held that a jury properly may be instructed on a lesser included offense when, inter alia, the evidence could justify the conviction of the lesser offense and the proof on elements that differentiate the lesser offense from the offense charged

tion and order that the judgment be modified to reflect a conviction on the lesser offense and that the defendant be sentenced thereon" [internal quotation marks omitted]), cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002).

Embodied in *Greene* is a recognition that "whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof." (Internal quotation marks omitted.) *State* v. *Tomlin*, 266 Conn. 608, 617, 835 A.2d 12 (2003).[4] In addition to this guarantee of notice, the jury's verdict of guilty on the greater offense guarantees that it found the defendant guilty of all of the elements of the lesser included offense. See *State* v. *Carpenter*, supra, 214 Conn. 85 ("[b]ecause the jury's verdict necessarily includes a determination that, absent a specific intent, all the elements of [General Statutes] § 53a-55 [a] [3] have been proven beyond a reasonable doubt, the defendant would not be prejudiced by a modification of the judgment to reflect a conviction of that charge"). As long as such notice and jury findings exist, there is no constitutional impediment to the exercise of our power to reverse a conviction while at the same time ordering the entry of judgment on a lesser included offense. See *State* v. *Edwards*, 201 Conn. 125, 134 n.6, 513 A.2d 669 (1986) ("[t]he constitutionality of the practice [of reversing a

is sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the greater offense but guilty of the lesser offense.

[4] In fact, we have relied on the same notice considerations to conclude that a defendant's waiver of his constitutional rights to a jury trial and his court trial election as to the greater offense were valid as to any lesser included offenses. See *State* v. *Williams*, 205 Conn. 456, 466, 534 A.2d 230 (1987) (defendant's waiver of right to jury trial for burglary in first degree constituted waiver for burglary in second degree as charged in substitute information "because a defendant is deemed to be on notice that a charge of the more serious offense encompasses the lesser offenses").

conviction while at the same time ordering the entry of judgment on a lesser included offense] has never seriously been questioned" [internal quotation marks omitted]); see also *Rutledge* v. *United States*, 517 U.S. 292, 305 n.15, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996) (*citing with approval four-pronged test announced by Court of Appeals for District of Columbia, which does not require jury to be instructed on lesser included offense, but, rather, provides that judgment can be modified if it can be shown "[1] that the evidence adduced at trial fails to support one or more elements of the crime of which [the accused] was convicted, [2] that such evidence sufficiently sustains all the elements of another offense, [3] that the latter is a lesser included offense of the former, and [4] that no undue prejudice will result to the accused" [internal quotation marks omitted]).

Such modifications are not limited to jury trials. In *State* v. *McGann*, 199 Conn. 163, 506 A.2d 109 (1986), a case tried to the court, as in the present case, this court modified a judgment of conviction from murder for hire, a capital felony, to murder; id., 179; because the latter crime was a lesser included offense and "the defendant could not have committed murder for hire without also committing intentional murder . . . ." (Internal quotation marks omitted.) Id., 178. The court modified the judgment of conviction because it concluded that "[t]he failure of the state to prove the additional element of a hiring to commit the murder leaves standing the finding . . . that the defendant did murder [the victim]." Id., 178–79. Because *McGann* involved a trial to the court, there were no jury instructions that might have given the defendant *express* notice of his criminal liability on the lesser included offense. There is also no indication in this court's decision in *McGann* that the state had requested this court to modify the judgment. Nevertheless, we noted that "[o]ur conclu-

sion that the judgment of the trial court was erroneous in convicting the defendant of a capital felony [did] not require a remand for a new trial." Id., 178.

Indeed, it is well settled that, even in the absence of a request from either party, the trial court may, sua sponte, submit a lesser included offense to the jury if the evidence supports such a charge. *State* v. *Rodriguez*, 180 Conn. 382, 408, 429 A.2d 919 (1980); *State* v. *Horne*, 19 Conn. App. 111, 145, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990); see also *State* v. *Jacobowitz*, 194 Conn. 408, 412–13, 480 A.2d 557 (1984) (implicitly recognizing court's discretion in concluding that trial court properly could have declined to instruct jury on lesser included offense in absence of request); *State* v. *Whistnant*, supra, 179 Conn. 581–82 (noting that question of whether due process clause of fourteenth amendment *requires* trial court to instruct the jury, sua sponte, on lesser included offense has not been resolved by federal courts). Thus, it is clear that the parties' conduct vis-á-vis jury instructions does not control exclusively whether a conviction may lie for a lesser included offense. The trial court's authority in this regard is rooted in the interests of justice, so that "the jury should not be . . . forced by its verdict to choose only between the offense with the [greater culpability] and acquittal." *State* v. *Asherman*, 193 Conn. 695, 731–32, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Similarly, the interests of justice would not be served by precluding an appellate court from ordering modification of the judgment to a conviction of a lesser offense simply because the parties did not request the trial court to provide such an instruction. Indeed, to conclude otherwise would require the state to request an instruction on every possible lesser included offense to the crime charged to avoid retrial should an appellate court

find an element of that crime not to have been supported by the evidence.

It is also significant that we have held that a jury cannot consider an instruction on a lesser included offense unless it first has determined that the defendant is not guilty of the greater offense. See *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993) ("to ensure that the charged offense has been determined by unanimous agreement, the court must direct the jury to reach a unanimous decision on the issue of guilt or innocence of the charged offense before going on to consider the lesser included offenses"); id., 585–87 (same, citing "acquittal first" rule). Therefore, in the present case, even if the jury had been charged on the lesser included offense, once it found the defendant guilty of the greater offense, it would not have reached the lesser offense. Accordingly, it makes no sense to conclude that, in a case in which the evidence would have rendered it proper to provide an instruction on the lesser offense; see footnote 3 of this concurring and dissenting opinion; the absence of such a request precludes modification of the judgment.

With respect to any concern that the state did not charge the defendant with unlawful restraint in the second degree in violation of § 53a-96, it is well settled that the state's failure to charge a lesser included offense does not preclude the submission of that charge to the jury. See *State* v. *Smith*, 185 Conn. 63, 77, 441 A.2d 84 (1981); *State* v. *Maselli*, 182 Conn. 66, 72, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Rodriguez*, supra, 180 Conn. 405; see also *United States* v. *Dhinsa*, 243 F.3d 635, 676 (2d Cir.), cert. denied, 534 U.S. 897, 122 S. Ct. 219, 151 L. Ed. 2d 156 (2001); *United States* v. *Martel*, 792 F.2d 630, 638 (7th Cir. 1986). This court has relied on this rationale to conclude that, even when a defendant has not been charged with the lesser included

offense, and the jury has not rendered a finding on the lesser included offense because of its finding of guilty on the greater offense, this court may order a modification of a defective judgment on the greater to the lesser. See *State* v. *Carpenter*, supra, 214 Conn. 85. Therefore, the state's failure to charge the defendant with the lesser included offense should not bar modification of the judgment of conviction.

The only "unique circumstances"[5] that we have identified as essential to the question of whether to reduce

---

[5] In *State* v. *Edwards*, supra, 201 Conn. 133–36 n.6, this court noted a long history of state and federal appellate courts exercising their power to reverse a conviction while at the same time ordering the entry of judgment on a lesser included offense. See id., citing *United States* v. *Cobb*, 558 F.2d 486, 489 (8th Cir. 1977); *Austin* v. *United States*, 382 F.2d 129, 140–42 (D.C. Cir. 1967); *Luitze* v. *State*, 204 Wis. 78, 84, 234 N.W. 382 (1931). I am aware, however, that there is not a consensus among the various jurisdictions to have considered the issue as to whether modification of a judgment to a conviction of a lesser included offense is proper in the absence of a jury instruction on that lesser offense. Compare *United States* v. *Hunt*, 129 F.3d 739, 745–46 (5th Cir. 1997) (instruction not required but should be considered in determining whether modification of judgment unduly prejudicial to defendant), *United States* v. *Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (no undue prejudice due to modification of judgment because possibility of instruction on lesser included offense existed throughout trial, and all elements were proven beyond reasonable doubt), *United States* v. *Lamartina*, 584 F.2d 764, 766–67 (6th Cir. 1978) (holding that, although District Court erred in refusing to instruct on lesser included offense, sentence should be vacated and case remanded for sentencing on lesser included offense, as there was sufficient evidence to support lesser but not greater offense), cert. denied, 440 U.S. 928, 99 S. Ct. 1263, 59 L. Ed. 2d 483 (1979), *Shields* v. *State*, 722 So. 2d 584, 587 (Miss. 1998) ("lesser included offense need not be before the jury in order to apply the direct remand rule"), *State* v. *Farrad*, 164 N.J. 247, 266, 753 A.2d 648 (2000) (reversing case for new trial but noting that "guilty verdict may be molded to convict on a lesser-included offense even if the jury was not instructed on that offense if [1] [the] defendant has been given his day in court, [2] all the elements of the lesser included offense are contained in the more serious offense and [3] [the] defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict" [internal quotation marks omitted]), *State* v. *Briggs*, 787 A.2d 479, 486–87 (R.I. 2001) (approving sentencing remand when, although jury was not instructed on lesser offense, defendant's trial testimony constituted evidence meeting all elements of lesser included offense of larceny) and *State* v. *Garcia*, 146 Wash. App. 821, 829–30, 193 P.3d 181 (2008) (order to modify

a conviction, determined to be improper because of

judgment to lesser included offense proper, even though state did not charge or request trial court, sitting as finder of fact, to consider lesser offense because lesser degree necessarily proved at trial and charge on greater offense gave defendant sufficient notice) with *United States* v. *Dhinsa*, supra, 243 F.3d 676 (because there was no jury instruction on lesser offense, court could not grant government's request to modify judgment of conviction), *United States* v. *Dinkane*, 17 F.3d 1192, 1198 (9th Cir. 1994) (jury instruction on lesser included offense required to modify judgment), *Ex parte Roberts*, 662 So. 2d 229, 232 (Ala. 1995) ("[i]t is well established that if an appellate court holds the evidence insufficient to support a jury's guilty verdict on a greater offense, but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment on that lesser included offense, provided that the jury was charged on the lesser included offense"), *State* v. *Villa*, 136 N.M. 367, 368, 98 P.3d 1017 (2004) ("conviction of an offense not presented to the jury would deprive the defendant of notice and an opportunity to defend against that charge and would be inconsistent with New Mexico law regarding jury instructions and preservation of error"), *State* v. *Brown*, 360 S.C. 581, 594, 602 S.E.2d 392 (2004) (jury must be instructed on lesser included offense in order to remand for sentencing on that crime) and *Collier* v. *State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (appellate court may reform judgment to conviction of lesser included offense only if [1] court finds evidence is insufficient to support conviction of charged offense but sufficient to support conviction on lesser included offense and [2] either jury was instructed on lesser included offense or one of parties asked for but was denied such instruction).

In my view, the rationale provided in those jurisdictions holding that modification of a judgment is improper in the absence of an instruction on the lesser offense is unpersuasive. See *United States* v. *Dhinsa*, supra, 243 F.3d 674, 676 (reasoning that rule of criminal procedure providing that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense . . . applies to the jury's—rather than a reviewing court's—finding of guilt on a lesser-included offense" [internal quotation marks omitted]); see also *United States* v. *Vasquez-Chan*, 978 F.2d 546, 554 n.5 (9th Cir. 1992) (citing cases in which other courts have modified judgment under facts wherein instruction on lesser offense had been given and relying on proposition that acquittal of greater offense necessarily means acquittal of lesser offense to conclude that "[i]f no such lesser-included offense instruction is given, the acquittal [whether at trial or on appeal] on the greater offense precludes a conviction on a lesser offense"); *State* v. *Brown*, supra, 360 S.C. 594–97 (citing as reasons for considering sentence remand only when lesser included offense has been properly charged to jury: [1] "appellate court does not sit as a [fact finder] in a criminal case and should avoid resolving cases in a manner which appears to place the appellate court in the jury box"; [2] "this view

insufficient evidence of an element, to a lesser included offense supported by the evidence is whether there is undue prejudice to the defendant. See *State* v. *Grant*, supra, 177 Conn. 148 ("[t]his power should be exercised only when it is clear that no undue prejudice will result to the accused" [internal quotation marks omitted]). Because there is no question in the present case that the defendant had a fair trial and that the jury properly was instructed on the element of restraint, there is no undue prejudice to the defendant if we reduce his conviction to the lesser offense.[6] See *State* v. *Saracino*,

preserves the important distinction between an appellate determination [that] the record contains sufficient evidence to support a guilty verdict and a jury determination [that] the [s]tate proved its case beyond a reasonable doubt"; [3] "[w]hen a lesser included offense is submitted to the jury, [and the jury] . . . returns a verdict of guilty on the greater offense necessarily [having] weighed evidence relating to the lesser offense . . . it can be said with some degree of certainty that a [sentencing remand] is but effecting the will of the fact finder within the limitations imposed by law; and, that the appellate court is simply passing on the sufficiency of the implied verdict . . . [but when] no instruction at all has been offered on the lesser offense, second guessing the jury becomes far more speculative"; [4] "when the jury could have explicitly returned a verdict on the lesser offense, the defendant is well aware of his potential liability for the lesser offense and usually will not be prejudiced by the modification of the judgment from the greater to the lesser offense"; [5] "adopting a practice of remanding for sentencing on a lesser included offense when that offense has not been submitted to the jury may prompt the [s]tate to avoid requesting or agreeing to submit a lesser included offense to the jury"; [6] "the [s]tate would obtain an unfair and improper strategic advantage if it successfully prevents the jury from considering a lesser included offense by adopting an all or nothing approach at trial, but then on appeal, perhaps recognizing the evidence will not support a conviction on the greater offense, is allowed to abandon its trial position and essentially concede the lesser included offense should have been submitted to the jury"; and [7] "[t]he defendant may well have foregone a particular defense or strategy due to the trial court's rejection of a lesser included offense" [internal quotation marks omitted]).

[6] Although the jury was not charged as to this lesser included offense in the present case, the defendant was on notice from the presence of the greater offense of kidnapping in the first degree in the information that he was being charged with conduct that included an element of restraint. See *State* v. *Tomlin*, supra, 266 Conn. 617 ("[When] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice

supra, 178 Conn. 421 ("[s]ince the jury could have explicitly returned . . . a verdict [of guilty of the lesser included offense of fourth degree larceny], the defendant was aware of her potential liability for this crime and would not now be prejudiced by modification of the judgment"). The defendant has not claimed any prejudice in the present case, and the majority acknowledges that no such prejudice exists. Therefore, this case falls squarely within the *usual* circumstance in which it is proper for this court to modify the conviction as the state reasonably requests. Therefore, in response to the state's motion for reconsideration, I would reduce the defendant's conviction to unlawful restraint in the second degree. I would deny the motion in all other respects.

Accordingly, I respectfully concur in part and dissent in part.

SCHALLER, J., dissenting in part. I respectfully disagree with the majority opinion insofar as it gives the state an option to request a modification of the conviction of the defendant, Paolino Sanseverino, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) to reflect the lesser included offense of unlawful restraint in the second degree in violation of General Statutes § 53a-96. Although I understand that this case presents a special set of circumstances, I

permits each party to prepare a case properly, each cognizant of its burden of proof." [Internal quotation marks omitted.]); *State* v. *Rodriguez*, supra, 180 Conn. 405 ("Permitting the jury to find the defendant guilty of a lesser charge of homicide than that charged, where the evidence supports such a finding, does not violate the defendant's sixth amendment right to notice. By the charge on the greater offense of murder, the defendant is put on notice that he will be put on trial for [the actions that form the basis for both crimes]. Thus, having been given notice of the most serious degree of culpable intent by the murder indictment, he is implicitly given notice of those lesser included homicides that require a less serious degree of culpable intent.").

remain convinced that modifying a conviction to reflect a lesser included offense is not appropriate unless the jury has received an instruction on the lesser included offense.

Although we have not addressed this question directly, Chief Justice Rogers points out in her concurring opinion that several of our sibling states have recognized that "a defendant not only has a right to lesser-included offense instructions on request, but also has a right to forego such instructions for strategic reasons." *State* v. *Sheppard*, 253 Mont. 118, 124, 832 P.2d 370 (1992). I agree with Chief Justice Rogers that "if the trial court has given no instruction on a lesser included offense, this court should not modify the judgment to reflect the lesser offense when the judgment on the greater offense has been overturned on appeal as the result of a legal error, and the sole remedy should be a retrial." I find the sound reasoning in *State* v. *Brown*, 360 S.C. 581, 594–97, 602 S.E.2d 392 (2004), very persuasive. In that case, the Supreme Court of South Carolina set forth a comprehensive statement of reasons why a jury instruction on the lesser included offense is a prerequisite to modifying the judgment.

Briefly paraphrasing the *Brown* rationale, the court determined that a remand for sentencing on a lesser included offense is appropriate only when a jury properly has been charged on that offense because: (1) appellate courts should avoid resolving cases in ways that involve fact finding or blur distinctions between appellate and trial court determinations; (2) requiring an instruction maintains the distinction between an appellate court's determination that the record evidence is sufficient to support a guilty verdict and a jury's determination that the state proved its case beyond a reasonable doubt; (3) when the jury has been instructed on the greater offense only, any attempt to assess what the jury would have determined with respect to the

lesser offense is speculative; (4) only when the jury has been instructed on the lesser offense and could have explicitly returned a verdict, is the defendant undeniably aware of his potential liability for the lesser offense; (5) the practice of remanding for sentencing on lesser offenses that have not been submitted to the jury may encourage the state to risk not seeking instructions; (6) the state gains an unfair strategic advantage if it *alone* can adopt an all or nothing approach at trial but, under some circumstances, change its position and argue that the lesser offense should have been submitted; and (7) the defendant may have forgone a particular defense or strategy due to the failure to instruct on a lesser included offense. Id.

I am not persuaded that the particular circumstances of this case justify departing from the standard supported by those reasons. The fact that there was a significant change in the interpretation of the kidnapping statute after the defendant's conviction but before the resolution of his appeal has no bearing on the soundness of the rationale expressed in *Brown*. I am not persuaded by the state's argument that the circumstances of this case justify not holding the state to its decision to forgo an instruction on a lesser included offense. I believe that the unfairness to a defendant by convicting him of a charge on which the original jury could *not* have convicted him outweighs whatever disadvantage the state may suffer from its tactical decision. If this rule is not enforced in this situation, this court is, in effect, resolving a case "in a manner which appears to place [an] appellate court in the jury box." Id., 594.

Although the majority adopts this modification procedure on a limited basis, I submit that the circumstances of this case do not justify an exception to the wise and sound principle that counsels otherwise. The state has not presented any reasons why it is entitled to benefit from the special advantage of optional courses of action

to the disadvantage of the defendant. If, indeed, the defendant "has benefited from our holding in [*State* v. *Salamon,* 287 Conn. 509, 949 A.2d 1092 (2008)]," as the majority argues, the *unexpected* holding in *Salamon* can be said to have done no more than to remedy a deficiency in the law, a *benefit* to which the defendant doubtless was entitled.

For the foregoing reasons, I respectfully dissent from part II of the majority opinion.